## STATE v. NEAL.

CRIMINAL LAW—MISDEMEANOR—SUPERINTENDENT OF PENITENTIARY.—
　　Under our statute, the superintendent of the penitentiary is crimi-
　　nally liable in failing to turn over to his successor moneys coming
　　into his hands from hire of convicts.

Before BENET, J., Richland, April, 1900. Reversed.

Indictment against W. A. Neal in the following words:

"At a Court of General Sessions, begun and holden in and
for the county of Richland, in the State of South Carolina,
at Columbia Court House, in the county and State aforesaid,
on the third Monday of October in the year of our Lord
1899. The jurors of and for the county aforesaid, in the
State aforesaid, upon their oath, present that William A.
Neal, late of the county and State aforesaid, on the 15th day
of March, in the year of our Lord 1899, and on divers other
days, since said day and up to and including the 15th day of
April, in said last mentioned year, with force and arms, at
Columbia Court House, in the county and State aforesaid,
did commit a misdemeanor in this: That he, the said William

A. Neal, was duly elected superintendent of the State penitentiary, located in said State and county, on the 26th day of November, in the year of our Lord 1892, and duly qualified as such on the 3d day of January, in the year of our Lord 1893, and entered upon and continued to discharge the duties of said office, being elected and qualified from time to time, up to and until the 15th day of March, in the year of our Lord 1899, at which time one D. J. Griffith duly and legally succeeded him as superintendent of the State penitentiary aforesaid and entered upon the discharge of duties of said office; and that on the 15th day of March, in the year of our Lord 1899, the said William A. Neal, as superintendent as aforesaid, had and held remaining in his hands, entrusted to him by virtue of his office, certain funds and sums of money, to wit: $500, which had been received by him, the said William A. Neal, as superintendent as aforesaid, from one J. S. Fowler on the 9th day of December, in the year of our Lord 1895, and $244, which he, the said William A. Neal, received from the said J. S. Fowler by virtue of his office as aforesaid, on the 24th day of February, in the year of our Lord 1897, and $300, which had been received by him, the said William A. Neal, by virtue of his office, from one W. Q. Hammond, on the 24th day of February, 1897; and $500, which had been received by him, the said William A. Neal, by virtue of his said office, from the said W. Q. Hammond, on the 27th day of November, in the year of our Lord 1895. All of which said funds and sums of money being derived from the hire of convicts of said penitentiary, the said William A. Neal, upon the succession to him of the said D. J. Griffith to the office aforesaid on the said 15th day of March, in the year of our Lord 1899, and within thirty days thereafter, did neglect and refuse to turn over to his successor in office as superintendent aforesaid, to wit: the said D. J. Griffith, at Columbia, in the county and State aforesaid, against the form of the statute in such case made and provided, and against the peace and dignity of the State. J. Wm. Thurmond, Solicitor."

Upon the call of the case, the defendant's counsel moved that the indictment be quashed upon the ground that it did not state facts sufficient to constitute a violation of the statute, sec. 304 of the Criminal Statutes, Revised Statutes of 1893, vol. 2. After hearing argument of counsel, the presiding Judge sustained the motion, and thereafter during the same term filed the following order:

"This indictment is framed under sec. 304, which provides: 'It shall be the duty of every sheriff, judge of probate, clerk of the court of common pleas, county treasurer, and any other State or county officer intrusted with funds by virtue of his office, upon retiring from office, to turn over to his successor all moneys received by him as such officer, and remaining in his hands as such officer, within thirty days from the time his successor shall have entered upon the duties of his office,' etc. It is very clear that in the case, say of a sheriff, moneys entrusted to him by virtue of his office must be turned over by him to his successor within thirty days, and there is no difficulty in ascertaining what moneys are received by him by virtue of his office; the law specifically points out what moneys a sheriff may receive, and the records will show what he has received. The question here is—does the law show what moneys, by virtue of his office, are entrusted to the superintendent of the State penitentiary? So far as I can make out from a cursory examination of the statutes with reference to the penitentiary, the superintendent nowhere receives money except from the proceeds of sales which he may make according to law, and any moneys received by him from the board of directors to be disbursed by him as they may direct. If he does receive money from other sources, it is not by virtue of his office, and all moneys that he has the power to expend are such moneys as he is directed to expend in such manner as the directors may from time to time direct. It is charged in this indictment that the moneys he failed to turn over to his successor, the superintendent of the penitentiary, were received for convict hire, derived from convict hire. It is

argued for the State that such money would fall under the provision of the act (sub-division 7 of section 551, Criminal Statutes), where it is made the duty of the superintendent of the penitentiary "To receive and pay out all moneys granted by the general assembly or in any other way accruing for the support of the prison and carrying on the work.' This is a criminal statute, and the Court is asked to pass upon the sufficiency of a criminal indictment. Criminal laws must be strictly construed. We must look for a statute to show what moneys accrue 'for the support of the prison and carrying on the work.' With reference to convict hire, there is a statute which seems to indicate clearly that such money does not go to the support of the prison or carrying on the work, but is required to be turned over to and paid in by the board of directors into the State treasury every three months, or within five days thereafter. This is found in each annual appropriation bill. (See, for example, sec. 3 of the appropriation act of 1899: 'Acts of the General Assembly, regular session 1899,' page 154.)

"It seems to me, gentlemen, that this indictment is not sufficient. The law does not show that the superintendent of the penitentiary is an officer allowed to receive convict hire by virtue of his office. Convict hire is by law itself directed to be received by the board of directors. True, any moneys which the superintendent may reveive by virtue of his office he has to turn over; but the law does not show that convict hire is such money. On the contrary, that money has to be received by the board of directors and by them paid into the State treasury. There is nothing to indicate that convict hire should ever get into the hands of the superintendent of the penitentiary, therefore, he is not required to turn over to his successor. If such money should get into his hands by mistake, or inadvertence, or even dishonestly, it could not be held that he had been entrusted with it by virtue of his office. That phrase, 'by virtue of his office,' can only mean 'legally' or 'according to law.' It is manifest that money arising from convict hire does not come into the

superintendent's hands in accordance with law. He is not the man to receive it. The law directs that the board of directors shall receive it. And such money when received is not to be turned over to the superintendent, 'by virtue of his office,' but is to be turned over to the State treasurer. This indictment alleges that W. A. Neal received money arising from convict hire and failed to turn it over to his successor, Griffith, in thirty days.

"I hold that if he did receive such money, he cannot be held to have been 'entrusted with it by virtue of his office;' and that he cannot in law be required to turn it over to his successor, nor punished for failing to do so.

"My opinion is that the demurrer of the defendant should be sustained and this indictment quashed. And it is so ordered."

From this order the State appeals.

*Attorney General G. Duncan Bellinger* and *Solicitor J. Wm. Thurmond*, for appellant. The former cites: *State treasurer must receive hire of convicts after expenses, &c.*: Supply acts of each year since 1894. *The board of directors are not entrusted with this fund:* Criminal Code, 547. *What are the duties of the superintendent?* Criminal Code, 551; sec. 2, p. 779, acts 1894; Crim. Code, 577, 573.

*Messrs. Julius E. Boggs, P. H. Nelson* and *Cole L. Blease*, contra. The former cites: *Board of directors collect convict hire:* Sec. 3, p. 560, acts 1897; sec. 3, p. 839, acts 1898; sec. 3, p. 154, acts 1899.

February 15, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an appeal from an order quashing an indictment. A copy of the indictment and of the order of the Court setting forth the grounds upon which the indictment was quashed, will be incorporated in the report of the case.

The appellant was indicted under section 304 of the Criminal Code, which contains the following provisions: "It shall be the duty of every sheriff, judge of probate, clerk of the court of common pleas, county treasurer, or any other State or county officer entrusted with funds by virtue of his office, upon retiring from office, to turn over to his successor all moneys received by him as such officer, and remaining in his hands as such officer, within thirty days from the time when his successor shall have entered upon the duties of his office, &c."

The fifth exception was abandoned.

It will not be necessary to consider the exceptions *seriatim,* as the appellant's attorneys correctly state that the practical question presented by them is: "Was Neal, at the said dates, as superintendent of the State penitentiary, and by virtue of his office as such, charged by law with the receipt of and intrusted with moneys arising from convict labor?" The office of superintendent of the penitentiary does not exist at common law. We must, therefore, look to the laws of our State to ascertain his powers, duties and liabilities. By section 551 of the Criminal Code, it is made the duty of the superintendent of the penitentiary "to receive and pay out all moneys granted by the General Assembly, or in any other way accruing for the support of the prison and carrying on the work." Section 3 of the act of 1899 (23 Stat.), p. 164, to which reference is made in the order of his Honor, the presiding Judge, contains the following provision, to wit: "That the board of directors of the State penitentiary are hereby directed to pay into the treasury of the State at the end of each three months, or within five days thereafter, all amounts received by them from the hire of convicts and from other sources, *after paying the necessary expenses of the said institution and all other disbursements allowed by law,* the said amounts to be paid into the treasury to be held subject to the warrants of the comptroller general, to pay the amounts appropriated by the General Assembly, in the same manner as other funds in the treasury * * *" (italics

ours).  The amounts received from the hire of convicts were not to be paid into the treasury until the "necessary expenses of the said institution and all other disbursements allowed by law" were deducted therefrom.  The moneys received from the hire of convicts were primarily applicable to said expenses and disbursements, and it was only the balance remaining after the payment of said expenses and disbursements that was to be paid into the treasury.  Section 3, act of 1899, must, therefore, be construed as intending that moneys received from the hire of convicts are to be regarded as "accruing for the support of the prison and carrying on the work."  Under the provision of the statute making it the duty of the superintendent of the penitentiary to receive all moneys "accruing for the support of the prison and carrying on the work," he had the right, by virtue of his office as superintendent, and it was made his duty to receive moneys arising from the hire of convicts.  His Honor, the Circuit Judge, was, therefore, in error in ruling that he did not receive the funds arising from the hire of convicts, by virtue of his office as superintendent.  There are several other statutory provisions, mentioned in the argument of the appellant's attorneys, at least, tending to show that the foregoing construction is correct, but the Court does not deem it necessary to refer to them.

It is the judgment of this Court, that the order of the Circuit Court be reversed.