8459

STATE v. PARNELL.

SEED COTTON—INTENT.—The words "traffic" and "engaged in traffic" are used interchangeably in acts relating to buying and selling seed cotton and one buying seed cotton one time contrary to the provisions of the statute, violates the law whether he intends to do so or not.

Before WILSON, J., Williamsburg, June, 1912.    Affirmed.

Indictment against Hoyt Parnell.    Defendant appeals.

*Messrs. Kelly & Hinds,* for appellant, cite: *Construction of words susceptible of more than one meaning:* 3 Hill 99; Potter's Dwar. St. 279; 36 Cyc. 1172, 1179; 23 Ency. 361. *Doubt should be resolved in favor of defendant:* Potter 130, 246; 26 N. Y. 523; 36 Cyc. 1186; 1 Whar. 44; 36 Cyc.

112; 23 Ency. 346, 349, 350; 12 Wheat 270; 19 N. J. 245. *How to gather intention of lawmakers:* Bish. on Stat. Crimes, 83; 73 U. S. 385; 28 S. C. 526; 1 Kent 521; Potter 133, 144; 5 Wheat 96; 36 Cyc. 110, 1137; 23 Ency. 319, 322. *Construction of similar acts:* 42 S. C. 211; 49 S. C. 527; Bish. on Stat. Crimes 1077, 1090. *The act must come within the reason and meaning of the statute:* Potter 129, 144, 247; 36 Cyc. 1108, 1110, 1187; 1 Kent 517; Bish. 226, 229, 231, 232, 240. *Charge did not cover the issues:* 86 S. C. 64;, 57 S. C. 36; 47 S. C. 507; 12 Cyc. 611, 612, 613. *Intent is an issue of fact:* 11 L. R. A. (N. S.) 814; 96 N. Y. 340; 8 S. C. 186.

*Solicitor P. H. Stoll,* contra.

March 15, 1913. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. The defendant was convicted under an indictment charging him with unlawfully trafficking in seed cotton within the prohibited period without a license; also, with unlawfully trafficking in seed cotton, between the hours of sunset and sunrise.

He appealed from the sentence imposed upon him by the Court.

The defendant requested his Honor, the presiding Judge, to charge the jury as follows:

"In order to determine whether or not the acts committed, come within the wording of the statute, it is necessary to give attention to the phraseology, herein used. The statute provides, that 'any person who shall engage in the traffic in seed cotton * * * without license, as herein provided, cr between the hours of sunset and sunrise * * * shall be guilty of a misdemeanor.'

"The word 'engage' means to 'carry on' (15 Cyc. 1047). The word 'traffic,' means 'the business or employment of buying and selling' (38 Cyc. 934, and citations). Therefore, 'to engage in the traffic in seed cotton,' one must carry

on the business of buying and selling seed cotton. There-
fore, a single act could not be in violation of the statute, and
if you find that the defendant, did buy seed cotton once or
twice without a license, or between sunset and sunrise, but
did not make it a business, of so buying and selling seed cot-
ton, you must find him not guilty."

The Circuit Judge refused the request; and we proceed to
the consideration of the exception, assigning error in this
respect.

In 1877 an act was passed, entitled "An act to prohibit the
sale of seed cotton, between the time of the setting and the
rising of the sun, and to regulate the sale of seed cotton,"
which provided: "That on and after the passage of this act,
it shall not be lawful for any person to buy or sell, or receive
by way of barter, exchange or traffic of any sort, any seed
cotton, between the hours of sundown and sunrise, of any
day."

In 1880 an act was passed striking out the last three
words, to wit: "of any day;" and said act, as amended in
1880, was incorporated in the Criminal Code of 1902, as
section 341.

In 1887 an act was passed, entitled "An act to regulate
the traffic in seed cotton, in the counties of Abbeville."
* * * The words, "engage in the traffic," are not men-
tioned in said act, whose provisions are substantially incor-
porated in the act of 1905, entitled "An act to regulate
the traffic in seed cotton and unpacked lint cotton."

The provisions of the last mentioned act, are as follows
(except as amended thereafter in certain particulars, not
material to the question under consideration):

SECTION 1. "The traffic in seed cotton * * * by pur-
chase, barter or exchange * * * is hereby declared against
the public welfare, and is prohibited.

SEC. 2. "The clerks of the Courts of Common Pleas
are authorized and empowered to issue licenses to traffic in
seed cotton * * * by purchase, barter or exchange * * *.

SEC. 3 "All persons in the traffic in seed cotton * * * are required to keep legibly written in a book, which shall be open to public inspection, the name of the person or persons from whom they purchase, or receive by way of barter, exchange or traffic of any sort, any seed cotton * * * with the number of pounds and date of purchase.

SEC. 4. "Any person who shall engage in the traffic in seed cotton, * * * without a license as herein provided, or between the hours of sunset and sunrise, * * * shall be deemed guilty of a misdemeanor, and, on conviction, shall be punished by a fine * * *.

SEC. 5. (Not material to the question under consideration.)

SEC. 6. "All acts and parts of acts inconsistant with this act be, and the same are hereby repealed."

Conceding that the words "engaged in traffic," ordinarily have the meaning for which the appellant contends, the vital question is, whether they must be so interpreted, in the present case. The interpretation for which the appellant contends, in the request to charge hereinbefore mentioned, would have been inapplicable to the act of 1887, as it provides, "that it shall not be lawful for any person to buy, sell or receive by way of barter, exchange, or traffic of any sort, any seed cotton between the hours of sundown and sunrise." And, as already mentioned, the words "engaged in traffic," do not appear in the act of 1887.

Let us now turn to the *act of 1905.*

In section 1 the word *traffic* alone appears. Section 2 provides that the clerks of the Courts are authorized to issue licenses, to *traffic* in seed cotton. Section 3 contains the provision, that all persons in the *traffic* in seed cotton, shall keep the book therein mentioned. Section 4 provides, that all persons who shall *engage in the traffic* in seed cotton, without license, *as therein provided,* shall be deemed guilty of a misdemeanor.

Turning to section 2 we find it states that the licenses are permitted to be issued "to traffic in seed cotton, by purchase, barter or exchange," and not "to engage in the traffic in seed cotton."

It will also be observed that neither the title of the act of 1877, nor the title of the act of 1887, nor the title of the act of 1905, contains the words, "engaged in the traffic,"—the latter two acts simply using the word "traffic."

There is no reasonable ground for supposing that the act of 1905 intended to change the meaning of the word "traffic," as used in the act of 1887, otherwise it would have used the words "engaged in the traffic," wherever the word "traffic" appears in the statute, and not have used these words in section 4 above; and, especially would they have been used in section 2, for the reason that if the words "traffic" and "engaged in the traffic" are to be construed as having a different meaning in the act, then the section conferring the power to issue licenses, and the section penalizing the offense are inconsistent, which, it is presumed, was not the intention of the legislature.

Our conclusion is that the words "traffic" and "engaged in traffic" were used interchangeably, and were intended to have the same meaning.

The exceptions raising this question are overruled.

The next question for consideration is whether there was error on the part of the Circuit Judge in refusing to charge that the jury could not find a verdict against the defendant if he sold the seed cotton at the time mentioned in the indictment without intending to violate the law.

In the case of *State* v. *Reeder,* 36 S. C. 497, 15 S. E. 544, the defendant was convicted for selling certain personal property covered by a lien and appealed from the sentence imposed upon him.

In that case his Honor, the presiding Judge, charged the jury that "the motive and intent is not a matter of inquiry,

it is the act; it is the fact. If he sells it, knowing that the superior lien exists, and gets it out of the way, that implies fraud."

In considering whether there was error in said charge, Mr. Chief Justice McIver, who delivered the opinion of the Court, used the following language: "It will be observed that this statute, unlike the many other penal statutes, contained no language implying that the act forbidden must be done wilfully or maliciously, or with intent to defraud, in order to make it criminal; but it simply forbids the doing of a certain act, without any words of qualification whatever, and in the absence of any such words, the Court has no power to supply them. * * * Courts are not at liberty to disregard such plain mandates of the lawmaking power, by interpolating into the statute, by construction, other provisions than those which the legislature has seen fit to make." This principle has been affirmed in the cases of: *State* v. *Assman,* 46 S. C. 554, 24 S. E. 673; *State* v. *Westmoreland,* 76 S. C. 145, 56 S. E. 673; *State* v. *Boyer,* 86 S. C. 260, 68 S. E. 573, and is conclusive of the question under consideration.

Appeal dismissed.