## Commonwealth v. McCall.

(Decided December 19, 1919.)

### Appeal from Madison Circuit Court.

1. Criminal Law—"Cold Check"—What Constitutes Offense—Sufficiency of Evidence.—Where a person gives a check, with the intent to defraud, on a bank in which he knows he has not sufficient funds to pay it, it is not essential to constitute the offense described in section 1213a of the Kentucky Statutes that any false representation, statement or pretence should be made by the maker of the check concerning the state of his account in the bank. The mere giving of such a check with the intent to defraud completes the offense and the intent to defraud will be present whenever money, property or other thing of value is parted with by the person to whom the check is given.

2. Criminal Law—"Cold Check"—How Offense May Be Obliterated. —Under the Statute, which gives the maker of a "cold check" twenty days in which to pay it, he must within that time pay or offer to pay the full amount of the check in money. He cannot save himself from the penalty of the statute by returning the property received, or other thing of value; nothing will obliterate the offense except payment or tender of the full amount of money specified in the check, nor will any agreement between the par-

ties, by or through which the matter is settled, stop a prosecution or prevent the enforcement of the penalty.

3.  Criminal Law—"Cold Check"—Time of Prosecution and Trial.—Under section 1213a a final trial should be postponed until after the time allowed to make the check good, although a prosecution may be commenced or an indictment found before that time has expired.

CHAS. H. MORRIS, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, and B. A. CRUTCHER for appellant.

A. R. BURNHAM, JR., and MATT WALTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Certifying the law.

The grand jury of Madison county returned the following indictment against the appellee, McCall:

"The grand jury of Madison county, in the name and by the authority of the Commonwealth of Kentucky, accuse Hubert McCall, alias Charley Johnson, of the crime of obtaining money and property by false pretenses.

That said Hubert McCall, alias Charley Johnson, on the 14th day of May, 1919, in the county aforesaid, did unlawfully, willfully, feloniously and falsely pretend and state to Webber Hamilton that his name was Charley Johnson and that he had on deposit in the State Bank & Trust Co., of Richmond, Ky., a sum of money on deposit in said Bank & Trust Co. sufficient to pay a certain check then and there presented to said Hamilton, and that said Bank & Trust Co. would pay said check, which said check was in words and figures as follows:'Richmond, Ky., May 13, 1919. State Bank & Trust Co. Pay to Hamilton Bros. or order forty-four 50/100 dollars for suit, shoes, &c. $44.50,' and signed Charley H. Johnson and the said Hamilton, relying on said statement as true, did deliver to the said McCall, alias Johnson, goods, wares, merchandise and money of the value of forty-four 50/100 dollars. which said statement was false and untrue in that the said McCall, alias Johnson, did not have on deposit in the State Bank & Trust Co. a sum of money sufficient to pay said check and the said McCall, alias Johnson, well knew that said statement was false and untrue at the time he made said statement and said statement was made with intent to defraud.

"The State Bank & Trust Co. is a corporation duly incorporated under the law of the State of Kentucky and duly authorized to conduct a general banking business, against the peace and dignity of the Commonwealth of Kentucky."

When the case came on for trial the Commonwealth introduced Webber Hamilton, the person to whom the check was made payable, and he testified that he was engaged in the mercantile business in Richmond, Madison county; that on May 13, 1919, McCall, who was operating under the assumed name of Charley H. Johnson, gave him a check on the State Bank & Trust Company for $44.50 in payment for a suit of clothes and other apparel that he bought at the time the check was given; that he said his name was Charles H. Johnson, and signed this name to the check; that when Johnson gave him the check he asked him how long he had been doing business at the bank and he said he had been doing business there for over three years; that he did not ask him if he had the $44.50 in the bank nor did he tell him he did; that believing the check to be good he let him have the articles which were of the value of $44.50; that on the same day, and a little while after this transaction, he was informed by the bank that there was no money to the credit of either Johnson or McCall, and he then went out on the street, found McCall and took him to the bank, when the cashier told him he had no money there; that he found his goods in the possession of McCall and got them when he was advised that the check was worthless.

The chief of police said that when he arrested McCall on the charge of obtaining money under false pretenses from Hamliton he said he was guilty of giving the check.

The cashier of the bank testified that there was no money in the bank, which was incorporated under the laws of Kentucky, to the credit of Johnson and that he had never seen him before.

On this evidence, which was all that was introduced, the trial judge instructed the jury to find the defendant not guilty, which they did, and there was a judgment accordingly.

On this appeal by the Commonwealth the argument is made that the indictment charged an offense under section 1213b of the Kentucky Statutes, and there was suf-

ficient evidence to show the guilt of McCall under this section, while counsel for McCall say the indictment was returned under section 1208 of the Kentucky Statutes, and there being no evidence to support it the judgment of acquittal was proper. It is further contended that if it should be held that the indictment was sufficient under section 1213a a like result must follow, as the goods for which the check was given were restored to Hamilton a few hours after the check was given.

Before coming to the law of the case we may here stop to say that in no event will our opinion affect Mc-Call, as the judgment of acquittal can not be disturbed; so that all we can do is to certify the law of the case for the guidance of trial courts in other cases.

Section 1208 describes the crime of obtaining money or property under false pretenses and provides that "if any person, by any false pretense, statement or token, with intention to commit a fraud, obtain from another money, property or other thing which may be the subject of larceny, or if he obtain by any false pretense, statement or token, with like intention, the signature of another to a writing, the false making whereof would be forgery, he shall be confined in the penitentiary not less than one nor more than five years."

It is also necessary to consider section 1213a, providing in part "That any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has not sufficient funds in such bank or other depository for the payment of such check, draft or order in full upon its presentation. . . .

"Provided, however, that if the person who makes, issues, utters, or delivers any such check, draft or order, shall pay the same within twenty days from the time he recieves actual notice, verbal or written, of the dishonor of such check, draft or order, he shall not be prosecuted under this section, and any prosecution that may have been instituted within the time above mentioned, shall, if payment of said check be made as aforesaid, be dismissed at the cost of defendant.

"The making, drawing, uttering or delivering of such check, draft or order as aforesaid, shall be *prima facie* evidence of intent to defraud."

Section 1213b reads in part that "Any person who shall knowingly make or cause to be made, either directly or indirectly, or through any agency whatsoever, any false statement in writing, with intent that it shall be relied upon, respecting the financial condition, or means or ability to pay, of himself, or any other person, firm or corporation, in whom he is interested, or for whom he is acting, for the purpose of procuring in any form whatsoever, either the delivery of personal property, the payment of cash, the making of a loan or credit, the extension of a credit, the discount of an account receivable or the making, acceptance, discount, sale or endorsement of a bill of exchange, or promissory note, for the benefit of either himself or of such person, firm, or corporation  .  .  .  shall be guilty of a felony, and upon conviction thereof shall be confined in the penitentiary for not less than one nor more than five years."

It will be observed that the indictment charged that Johnson, whom we will call McCall, as that was his real name, did unlawfully, wilfully and falsely represent to Hamilton that he had on deposit in the State Bank & Trust Company a sum of money sufficient to pay the check given to and accepted by Hamilton, who relied on the truth of the statement, when McCall at the time knew he did not have on deposit a sum of money sufficient to pay the check, and knew that his statement, which was made with the intent to defraud, was false.

Except for section 1213a, or in other words, if it had not been enacted, we would have no doubt that the indictment charged in sufficient terms an offense under section 1208, although the evidence was not sufficient to make out the case for the Commonwealth, because the goods were not obtained on the faith or credit of any false pretense within the meaning of section 1208. The mere giving of a worthess check unaccompanied by any false statement is not an offense under this section.

Such an offense falls under section 1213a, which was enacted for the purpose of punishing any person who gives a check with the intent to defraud, knowing at the time he does so that he has not sufficient funds in the bank to pay the check. This section creates a new and distinct offense, the commission of which is accomplished by giving a check with the intent to defraud on a bank in which the maker knows he has not sufficient funds to pay the check, and it is not essential to constitute an

offense under this section that any false representation, statement or pretense should be made by the maker of the check concerning the state of his account in the bank, on which the check is given, or in connection with the transaction. No questions need be asked by the person to whom the check is given or information volunteered by the person giving the check. The mere giving of such a check with the intent to defraud, will constitute the offense, and the intent to defraud will be present whenever money, property or other thing of value is parted with by the person to whom the check is given.

The offense, however, committed in giving such a check will be excused if the person giving the check pays the same within twenty days from the time he receives notice of its dishonor, and it may be conceded that one purpose of this section was to enable persons to whom what is commonly known as "cold checks" were given to collect the amount thereof by a threat of prosecution if the money was not forthcoming within the twenty days of grace allowed by the statute.

It is clear under this statute, in fact so provided, that if the maker of the check "shall pay the same within twenty days from the time he receives actual notice, verbal or written, of the dishonor" he can not be punished for giving the check, and that if any prosecution has been instituted before the expiration of the twenty days it shall be dismissed if the check within that time is paid. But the maker of the check can not save himself from the penalty of the statute by returning property received on the faith of it, or any property or other thing of value except money, in the full amount of the check.

A check represents money and when a person gives a check on a bank the payee of it has the right to believe that the maker has sufficient funds in the bank to pay it and that it will be paid in money on presentation. The offense described in the statute is committed when the maker has not sufficient funds in the bank to pay the check at the time he gives it, and this offense can only be satisfied by paying or offering to pay in money the amount of the check within the twenty days allowed by the statute. It was not the intention of the statute that the maker should be allowed after practicing a fraud in giving it to relieve himself of the penalty by delivering to the payee property or other thing of value except money to the amount of the check.

It is suggested that as one object of the statute was to protect persons who had been defrauded by accepting worthless checks, any settlement made between the maker and the payee of the check will obliterate the offense, but to this we cannot agree. As between the parties the payment by the maker of less than the amount of the check in money or the delivery of property of less or as much value as the amount of the check may be a satisfactory settlement of the transaction, and in many cases we have no doubt the payee would be glad to accept money or property of less value than the amount of the check in satisfaction of it. But the Commonwealth has an interest in the case and its interest cannot be compromised or settled in any way except in the manner provided in the statute.

The offense is complete when the worthless check is given with intent to defraud, and the statute has pointed out the only way in which this offense can be blotted out. Nothing short of this will acquit the maker no matter what he and the payee have agreed to. Their agreement to settle the matter in any other way than as provided in the statute will not be allowed to stay the prosecution or prevent the enforcement of the penalty.

It follows from what we have said that the indictment, although it contained surplus matter, sufficiently charged the offense described in section 1213a and the evidence was sufficient to sustain a prosecution under this section.

There could not however, have been a judgment in this case because the trial was commenced before the expiration of the twenty days from the time the maker of the check had notice of its dishonor. In cases like this a final trial should be postponed until after the time allowed to make the check good, although a prosecution may be commenced or an indictment found before that time has expired.

In reference to the argument for the Commonwealth that the indictment and evidence were sufficient to support a prosecution under section 1213b, it is sufficient to say that neither the indictment nor the evidence brought this case within the meaning of section 1213b. The offense plainly fell directly within the meaning of section 1213a. Sections 1208 and 1213b, although each relates to offenses involving the obtaining of money, property or other thing of value by false pretenses, statements or

declarations, were intended to apply to different states of fact, and section 1213b, as held in Commonwealth v. Boyd, 181 Ky. 382, repeals so much of section 1208 as relates to false statements made in writing respecting the financial condition or means or ability to pay of the persons making the statement or any other person, firm or corporaiton in whom he is interested or for whom he is acting. An indictment for an offense of this nature must be brought under section 1213b.

This opinion is certified as the law of the case.