## 11482

### STATE v. MOORE

#### (122 S. E., 672)

1. FALSE PRETENSES—ACT CHANGING ELEMENT OF OFFENSE HELD TO INVALIDATE INDICTMENT.—An indictment under Cr. Code 1912, § 208, making it a misdemeanor to draw a check when drawer has no funds on deposit, *held* invalid, as Act March 1, 1923 (33 St. at Large, p. 120), making fraudulent intent an element of that offense, repealed that section.

2. CRIMINAL LAW—CHANGE IN ELEMENTS OF OFFENSE DESTROYS IDENTITY AND EFFECTS REPEAL TO THAT EXTENT.—A change of the elements of an offense will destroy its identity and effect a repeal to the extent of the repugnance.

3. CRIMINAL LAW—LATER STATUTE DEFINING OFFENSE REPEALS EARLIER ONE.—Where a later statute defines an offense which is described in an earlier statute, earlier one is repealed.

Before DEVORE, J., Marlboro, March, 1923. Order revised.

Marion W. Moore, indicted for violating Sec. 208, Crim. Code, 1912. From refusal to quash the indictment and dismiss same the defendant appeals.

*Messrs. McColl & Stevenson,* for appellant, cite: Sec. 208, Crim. Code, 1912. *Is unconstitutional:* Art. 1, Sec. 24, Const. S. C., 1895, Art 1 Sec. 5, Id; 14th Amend. Const. U. S. *Imprisonment for debt:* 79 S. C., 16; 32 S. C., 124; 56 S. C., 420; 61 S. C., 71; 64 S. C., 207; 92 S. C., 108 S. E., 783. *No due process of law.* 19 U. S., 235; 156 U. S., 432; N. C. Statute; 3 N. C. Code, 1913; Sec. 3434-b.

*Messrs. N. W. Edens* and *J. L. Owens* for the State.

April 22, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an indictment under Section 208, Criminal Code of 1912, which reads as follows:

"Sec. 208. *Misdemeanor to Draw a Check When Drawer Has No Funds on Deposit.* Any person who shall hereafter draw and utter any check, draft, or order upon a bank, banking house, person, firm, or corporation with which or whom he has not, at the time, sufficient funds to meet the same, and shall thereby obtain from another money or other thing of a value or induce such person to surrender or postpone any remedy he may have against such drawer, shall be guilty of a misdemeanor, and, upon conviction, shall be punished by fine or imprisonment in the discretion of the Court; the offense to be within the jurisdiction of the Magistrate's Court if the value of the property obtained be less than twenty dollars and be punished by a fine not exceeding one hundred dollars or imprisonment not exceeding thirty days: Provided, that if such person shall deposit with the drawee of such paper within thirty days thereafter funds sufficient to meet the same with all costs and interest which may have accrued, the prosecution under this Section shall be discontinued."

In 1923 the Legislature re-enacted this Section (33 2, 3 St. at Large, p. 120), but required the presence of a fraudulent intent. The Act of 1923 repealed the section of the Code upon which this indictment was founded, and the demurrer to the indictment should have been sustained.

Sutherland on Statutory Construction, § 142: "A change of the elements of the offense, or in the elements or amount of the penalty will destroy the identity of the offense and effect a repeal to the extent of the repugnance."

25 Ruling Case Law, p. 930: "Thus where a later statute defines an offense that is described in an earlier statute, the earlier statute is repealed."

In this case the earlier statute provided punishment without fraud; the later statute made fraud an essential element of the offense. The second statute repeals the first. The demurrer to the indictment should have been sustained, and the order appealed from is reversed.

MESSRS. JUSTICES WATTS and MARION concur.

MR. JUSTICE COTHRAN: I concur in the result attained by the opinion of Mr. Justice Fraser, which is the dismissal of the prosecution, upon the ground of want of jurisdiction, and not upon the ground that the demurrer to the indictment should have been sustained, for the ground upon which the dismissal is adjudged was not the ground of the demurrer.

The Act of 1923, in prescribing a new element in the offense declared by the Act of 1909 (26 St. at Large, p. 18), the intent to defraud, and by its manifest provisions, was intended to cover the whole subject of "bogus checks," and embraced new provisions, plainly showing that it was a substitute for the Act of 1909. It therefore operated as a repeal of the Act of 1909. *U. S. v. Tynen,* 11 Wall., 88; 20 L. Ed., 153; *U. S. v. Claflin,* 97 U. S., 546; 24 L. Ed., 1082; note to 88 Am. St. Rep., 288. *State v. Thomas,* 14 Rich., 163.

In *State v. Lewis,* 33 S. E., 351 (not reported in South Carolina Reports), the Court decided that the Circuit Court had no jurisdiction of a prosecution of one for committing an act after the statute making it a crime had been repealed, citing *State v. Mansel,* 52 S. C., 468; 30 S. E., 481, and practically overruling *State v. Taylor,* 2 McCord, 483.

In the *Mansel Case* the Court also held that the matter was one of jurisdiction which could be raised for the first time in this Court, and as I think *sua sponte.*

Upon the point raised by the demurrer I have this to say: This appeal, coming up from an order overruling a demurrer to an indictment for violation of Section 208, Criminal Code of 1912 (Section 60 of 1920, the "bogus check law," involves the constitutionality of that statute. While the statute has been superseded by the Act of 1923 (33 St. at Large, p. 120), and the question is academic except as to the case at bar and other cases that may have arisen under the former statute, it is one of exceedingly great importance, affecting vitally the powers of a co-ordinate branch of the government. A decision of this Court against its constitutionality will, in my opinion, annihilate more than a score of criminal statutes upon the books.

Article 1, § 24, of the Constitution, provides:

"No person shall be imprisoned for debt except in cases of fraud."

It is contended by the appellant that the statute in question is violative of this constitutional provision. I do not think that it requires much stretch of the imagination to draw the conclusion that the Act of 1909 (Section 208) was passed in consequence of the decision of this Court in the case of *State v. Hicks,* 77 S. C., 289; 57 S. E., 842, filed July 8, 1907. In that case Hicks passed for its face value in cash a check upon a bank in which he had no funds. He was indicted under the statute punishing the obtaining of money under false pretenses (Cr. Code, 1922, § 64). The Court held in effect that, while the drawing of a check upon a bank in which the drawer had no funds, was a false representation, the statute required in addition to that proof of the fact that it was done with intent to defraud, as its terms plainly show, and reversed the judgment of conviction upon the ground that the Circuit Judge erroneously charged the jury that the intent to defraud was conclusively shown by the false representation. While no objection was or could rightly be urged against this interpretation of the false pretenses statute, the Legislature evidently realized that the

increasing magnitude of operations in worthless paper and the consequent demoralization of trade demanded a closing of the loophole through which so many crooks would escape, due to the difficulty of proving the necessary mental attitude of the check flasher, under that statute. Accordingly, as I think it fair to assume, the Act of 1909 was passed, and I will assume, what I believe to be true, that its purpose was to declare it a misdemeanor to issue a check under the circumstances stated in the statute, and that the offense should be complete without allegation or proof of an intention on the part of the drawer to defraud.

This meets the issue squarely, and the battle ground chosen by the objectors to the statute is accepted; namely, that the omission of the element of intention to defraud renders the statute objectionable to the constitutional provision above quoted.

In my opinion the statute is impervious to that attack for the following reasons:

(1) It is an authorized exercise of legislative power to declare that the inhibited act shall constitute a misdemeanor, regardless of the intention of the perpetrator.

(2) It does not purport to punish the offender for the nonpayment of a debt, but for the violation of a criminal statute.

(3) The obtaining of money by a bogus check is the result of a false representation; an action therefor sounds in tort, and the constitutional provision is limited to debts arising *ex contractu.*

1. The statute is an authorized exercise of legislative power to declare that the inhibited act shall constitute a misdemeanor regardless of the intention of the perpetrator.

Regardless of any intention upon the part of the drawer of an invalid check to defraud the payee, it must be assumed that the Legislature recognized the existence of an evil which the statute was intended to curb: Carelessness in business dealings; overdrafts which caused imitation and trouble if

dishonored, and embarrassment, loss of confidence, and injury, defalcations, and bankruptcy if honored; the practice of "kiting" checks; imposition and fraud; and disturbance of the even flow of the channels of trade and commerce, 75 per cent. of the business of which is transacted on paper. As a simple matter of morals it is wrong, if not fraudulent, to draw a check upon a bank in which there are no funds to meet it, and as a matter of public policy the law frowned upon it and proposed to stop it. That it had the power to declare it a crime regardless of the intention to defraud I have not a doubt.

In the case of *State v. Am. Ag. Co.,* 118 S. C., 333; 110 S. E., 800, the Court said:

"In offenses at common law, and under statutes, which do not disclose a contrary legislative purpose, to constitute a crime, the act must be accompanied by a criminal intent, or by such negligence or indifference to a duty or to consequences as is regarded by the law as equivalent to a criminal intent. The statute, however, may forbid the doing of an act, and make its commission a crime, regardless of the intent or knowledge of the doer, and, if such legislative intention appears, the Court must give it effect, although the intent of the doer may have been innocent."

In *State v. Reeder,* 36 S. C., 497; 15 S. E., 544, the Court had under review the statute which made it a crime to sell personal property covered by a lien. An exception assigned error in the following charge:

"The motive and intent is not a matter of inquiry. It is the act. It is the fact. If he sells it and disposes of it knowing that the superior lien exists, and gets it out of the way, that implies fraud."

In overruling the exception the Court said:

"For it will be observed that this statute, unlike many other penal statutes, contained no language implying that the act forbidden must be done willfully or maliciously, or with intent to defraud, in order to make it criminal; but it simply

forbids the doing of a certain act, without any words of qualification whatsoever, and in the absence of any such words the Court has no power to supply them. Owing, probably, to the fact that personal property generally may be so easily transported from one place to another, and thus placed beyond the reach of those having a prior or preferred lien upon it, the Legislature has seen fit to prohibit absolutely its sale by any person, unless provision is made, as prescribed by the statute, for the payment of such preferred lien, without regard to the intent of the person who makes the sale; and Courts are not at liberty to disregard such a plain mandate of the law-making power by interpolating into the statute, by construction, other provisions than those which the Legislature has seen fit to make."

The same situation arose in the case of *State v. Boyer,* 86 S. C., 260; 68 S. E., 573, where the Court said:

"It was not essential for the state to show that the property was disposed of with intent to defeat the lien. *State v. Reeder,* 36 S. C., 497; 15 S. E., 544. It is sufficient to show that the property under lien was sold or disposed of with notice of the lien, without the written consent of the lienor, and without payment or deposit as required by the statute."

In *State v. Assmann,* 46 S. C., 554; 24 S. E., 673, the Court had under review Section 387, Cr. Code, 1902 (Section 544 of 1912; Section 471 of 1922), making it a crime for certain public officers to fail to turn over money intrusted to them officially to their successors within 30 days. Exception was made to the charge in holding "that the motive and intent of the defendant does not enter into the case." The Court sustained the charge, saying, after citing and quoting from the *Reeder Case, supra,* 36 S. C., 497; 15 S. E., 544:

"So, under the statute under consideration in the case at bar, the act made punishable is the neglect or refusal to turn over moneys in hand to the successor in office within a

specified time, without any words of qualification whatever, and we have no power to add by construction what the Legislature has not seen fit to declare."

The statute was enforced in *State v. Neal,* 59 S. C., 259; 37 S. E., 826. See, also, *State v. Parnell,* 94 S. C., 21; 77 S. E., 719. *State v. Westmoreland,* 76 S. C., 145; 56 S. E., 673; 8 L. R. A. (N. S.), 842. *Richland v. Surety Co.,* 92 S. C., 329; 75 S. E., 549. *State v. Rice,* 43 S. C., 200; 20 S. E., 986.

In 16 C. J., 76, it is said:

"The Legislature however may forbid the doing of an act and make its commission criminal, without regard to the intent or knowledge of the doer, and if such legislative intention appears the Courts must give it effect, although the intent of the doer may have been innocent"—citing cases from Federal Courts, 37 States, England, and Canada.

In *Shevlin-Carpenter Co. v. Minnesota,* 218 U. S., 57; 30 Sup. Ct., 663; 54 L. Ed., 930, it is declared:

" 'The Legislature may enjoin, permit, forbid and punish; they may declare new crimes and establish rules of conduct for all its citizens in future cases.' In other words, innocence cannot be asserted of an action which violates existing law."

It is unquestionably true that the issuing of a check upon a bank where there are no funds to meet it, by which money is obtained from another, if done with intent to defraud, is *malum in se,* and justly suffers the odium attached to moral turpitude. We may concede that in the absence of intent to defraud it would not constitute *malum in se;* but where the law makes it a misdemeanor regardless of the intent it is *malum prohibitum,* and within the legislative power.

"A corrupt purpose, a wicked intent to do evil, is indispensable to a conviction of a crime which is morally wrong. But no evil intent is essential to an offense which is a mere *malum prohibitum.* A simple purpose to do the act forbidden in violation of the statute is the only criminal intent

requisite to a conviction of a statutory offense which is not *malum in se. Armour Co. v. U. S.;* 153 Fed., 1; 82 C. C. A., 135; 14 L. R. A. (N. S.), 400, affirmed by U. S. Sup. Ct. 209 U. S., 56; 28 Sup. Ct. 428; 52 L. Ed., 681. It follows that the only criminal requisite to a conviction of an offense created by statute, which is not *malum in se,* is the purpose to do the act in violation of the statute." 1 Bish. Cr. L. (9th Ed.) § 206a. ·

In *State v. Engle,* 156 Ind., 339; 58 N. E., 698, it is held that a statute declaring that a person who removes his baggage from a rooming hotel without paying his bills may be imprisoned does not require that the act shall be done with intent to defraud, and is not contrary to the constitutional prohibition of imprisonment for debt. The Court says:

"If an act, of itself colorless in moral quality, is made *malum prohibitum* by statute, the voluntary doing of the act, regardless of the intent, constitutes the offense."

The following review does not purport to be exhaustive, but these are a few of the criminal statutes of South Carolina will be absolutely emasculated by sustaining the contention which omit the element of intention to defraud, and which of the appellant in this case (the numbered sections refer to the Criminal Code of 1922):

Section 88. The conversion of funds intrusted to a member or officer of the reserved militia.

Section 98. The disposition of agricultural products placed in storage.

Section 107. The obtaining of credit at a hotel, in a boarding house or hospital by the use of any false pretense or device.

Section 108. The procuring of board or lodging upon a false representation of money due or to become due, and out of which the account is to be paid, and the refusal to comply with the agreement.

Section 177. The purchasing of certain agricultural products for cash, and the refusal to pay for them.

Section 20. The failure to support wife and children.

Section 61. The use of the name of a corporation to obtain money.

Section 172. The sale or disposition of property covered by a mortgage or other lien.

Section 173. The failure to pay subcontractors, etc., out of money received on a building contract.

Section 178. The failure of a factor or commission merchant to account for agricultural produce sold.

Section 467. Failure of certain officers to promptly turn over fines collected.

Section 485. Failure to turn over money to successor in office.

Section 494. Failure of magistrate to turn over fines collected.

Each of these inhibited acts, selected at random from many others, involves the idea of debt. The law makes them crimes regardless of the intention to defraud. A prosecution results in punishment not for a failure to pay the debt, but for the violation of a criminal statute.

Our statute punishing the obtaining of property under false pretenses requires the element of an intention to cheat and defraud. Could there be any question of the legislative power to omit that element in declaring that the obtaining of property upon a false representation should be a crime? So with the statute punishing a breach of trust. That requires also the element of intention to defraud. Could there be a similar doubt in reference to this offense? Such amendments would be exactly in line with the statute punishing the sale of property under a lien when such intention is not made an element in the offense, although it is directly connected with the nonpayment of a debt.

2. The statute does not propose to punish the offender for the nonpayment of a debt, but for the violation of an authorized criminal statute.

If, as I have endeavored to show above, the Legislature has the power to declare it a crime to issue a check upon a bank where there were no funds to meet it, and thereby obtain money or other things of value, regardless of the intention of the maker to defraud or not to defraud, then it is clear that the prosecution was for a violation of the criminal statute, and not for the nonpayment of a debt evidenced by the check.    The statute does not require the payment of the debt, and the payment does not release the defendant; it requires, or rather as a privilege allows, the defendant to deposit the amount of the check with the bank.    The act which the statute permits may result in the payment of the debt, but there is no compulsion even as to that, nor is the failure made a part of the crime.

It is demonstrable that the nonpayment of the debts is not the essence of the offense.    The "flasher" cannot relieve himself by paying the debt or by returning the property obtained upon the false representation.    The statute requires him to deposit with the drawee "sufficient funds to meet the same," regardless of any private arrangement he may have made with th payee.    This is illustrated by the case of *Commonwealth v. McCall,* 186 Ky., 301; 217 S. W., 109.    The Kentucky statute (Ky. St. § 1213a) authorized a dismissal of the prosecution if the maker of the check paid it within 20 days.    The Court said:

"But the maker of the check cannot save himself from the penalty of the statute by returning property received on the faith of it, or any property or other thing of value except money, in the full amount of the check."

Nothing short of this will acquit the maker,. no matter what he and the payee have agreed to.    Their agreement to settle the matter in any other way than as provided in the statute will not be allowed to stay the prosecution or prevent the enforcement of the penalty; showing that whatever settlement is to be made by which the prosecution is to be suspended must be made between the "flasher" and the law, and not between him and his creditor, which would be the case

if the matter concerned was simply the settlement of a debt.

The statute is aimed at a practice which has become a menace to the trade and commerce of the country. The crook who "flashes" a bogus check does a good deal more than contract a debt. It is a mistaken charity that places him in the category of the honest man who is unable to pay his debts and around whom the Constitution throws its protecting arms.

It is insisted, however, that the language of the prevailing opinion in *Ex parte* Hollman, 79 S. C., 9; 60 S. E., 19; 21 L. R. A. (N. S.), 242; 14 Ann. Cas. 1105, is applicable:

"The power of the General Assembly to make an act criminal which was before innocent is familiar. But the legislative power to make acts criminal and punishable by imprisonment cannot be extended to an invasion of the rights guaranteed the citizen by the Constitution. It is impossible to frame a valid statute punishing by imprisonment the exercise of the right * * * to be exempt from imprisonment for debt except in a case of fraud."

In other words, it is contended that imprisoning a man for a violation of the act is imprisoning him for the nonpayment of the debt.

In *State v. Hertzog* 92 S. C., 14; 75 S. E., 374, the Court had under review Section 338, Cr. Code, 1902 (Section 451 of 1912; Section 173 of 1922), making a contractor criminally liable for failure to pay subcontractors, laborers, and materialmen out of the money received by him on a building contract. The statute was sustained against an attack based upon a constitutional objection that it provided imprisonment for debt. The Court said:

"The only reasonable construction of the statute is that it makes penal not the mere failure to pay a debt, but the disposition by the contractor of a specific sum of money held by him under a lien so as to defeat the lien. Under this construction the statute does not violate the constitutional inhibition against imprisonment for debt except in cases of

fraud;" that the point was controlled by *State v. Barden,* 64 S. C., 207; 41 S. E., 959 and not by *Ex parte Hollman.*

Under that statute it was made the duty of a contractor to pay the subcontractor, etc., out of money received by him on a building contract, and supporting that duty a lien was provided. It was none the less a debt because of the lien. The Court held that the punishment was for destroying the lien, and not for not paying the debt. There can be little difference between disposing of property upon which a lien has attached and falsely representing that it was where the lien could attach.

The case of *State v. Barden,* 64 S. C., 206; 41 S. E., 959, presented a case which is much nearer to imprisonment for debt than the "bogus check law." The statute there reviewed was Section 337, Cr. Code, 1902 (Section 447 of 1912; Section 172 of 1922), making it a crime to sell or dispose of personal property covered by a lien, and failing "to pay the debt secured by the same within 10 days," etc. The Court sustained the constitutionality of the statute.

In *State v. Avery,* 111 Kan., 588; 207 Pac., 838; 23 A. L. R., 453, the defendant was convicted under a very similar statute to Section 208, which omitted the element of intention to defraud. The Court sustaining it said:

"The purpose of the statute was to discourage overdrafts and resulting bad banking (*Saylors v. Bank,* 99 Kan. 515, 518, 163 Pac. 454) to stop the practice of 'check kiting' and generally to avert the mischief to trade, commerce, and banking which the circulation of worthless checks inflicts. Although the statute tends to suppress fraud committed by the worthless check method, the evils referred to are all quite distinct from those consequent on fraud, and the statute is to be regarded as creating a new and distinct offense."

In disposing of the contention that the Statute was in conflict with the provision in the Constitution which forbids imprisonment for debt except in cases of fraud, the Court says:

"The statute does not impose imprisonment for debt; * * * the offense does not consist in nonpayment of debt, but in resorting to a practice which the Legislature regarded as demoralizing to business. * * * The offense is not committed against the payee of the check, but consists in the public nuisance resulting from the practice of putting worthless checks in circulation."

In *Ex parte King,* 102 Ala., 182; 15 South., 524, it was held that there was nothing in the statute for the protection of hotel keepers in violation of the imprisonment for debt provision in the Constitution. The Court says:

"One who violates the act is imprisoned, not for the debt he owes the proprietor, and not to make him pay it, but to punish him for a wrong he has perpetrated, which is made a crime."

The Kentucky statute contains the condition "with intent to defraud." Notwithstanding, the Court in the case of *Commonwealth v. McCall,* 186 Ky., 301; 217 S. W., 109, says:

"No questions need be asked by the person to whom the check is given or information volunteered by the person giving the check. The mere giving of such a check with the intent to defraud will constitute the offense, and the intent to defraud will be present whenever money, property or other thing of value is parted with by the person to whom the check is given."

In South Dakota they have a statute (Rev. Code, 1919, § 4249) which makes it a crime "designedly" to obtain money by false pretenses. The Court held in *State v. Taylor,* 44 S. D., 332; 183 N. W., 998, that it was not necessary to allege that the act was done "with intent to cheat or defraud," as such intent was not a necessary element of the crime, the statute requiring only that it be done "designedly." In this instance it seems clear that fraudulent intent was purposely omitted from the enumeration of elements of the crime. *State v. Avery, supra.*

In the case of *Re Milecke,* 52 Wash., 312; 100 Pac. 743; 21 L. R. A. (N. S.), 259; 132 Am. St. Rep., 968, the statute (Laws, 1903, p. 244) authorized imprisonment of one who obtains food and lodging without paying therefor with intent to defraud, or who, after obtaining it, absconds without paying for it. It was attacked upon the constitutional ground now under consideration. The Court sustained the statute upon the ground that the defendant was not being imprisoned for nonpayment of his hotel bill, but for his violation of the statute enacted to prevent a fraud. To the same effect is *State v. Yardley,* 95 Tenn., 546; 32 S. W., 481; 34 L. R. A., 656. *State v. Benson,* 28 Minn., 424; 10 N. W., 471. *State v. Engle,* 156 Ind., 339; 58 N. E., 698.

A North Carolina statute (Code, § 1027) provides that one who procures advances on a written representation that he is the owner of any specific personal property, and that he will apply it to the payment of the advances, and fails to do so, is guilty of a misdemeanor, and punishable. Against an attack the Court held in *State v. Torrence,* 127 N. C., 550; 37 S. E., 268, that it was not in conflict with the Constitution, forbidding imprisonment for debt except in cases of fraud, saying:

"It is not the failure to pay the debt which is made indictable, but the failure to apply certain property which in writing has been pledged for its payment, and advances made on the faith of such pledge."

In *Robertson v. People,* 20 Colo., 279; 38 Pac., 326, the Court sustained a statute under similar attack which made it a crime to receive deposits in a bank with knowledge of its insolvency, there being nothing in the statute relating to the intention of the officer receiving them. "The imprisonment here is not for any debt  *  *  *  but upon a charge of an act made a misdemeanor by the statute."

In *McQuagge v. State,* 80 Fla., 768; 87 South., 60, the worthless check act of Florida (Laws, 1917, c. 7263),

which provides punishment for giving a worthless check and failing within 24 hours to make full restitution by returning the consideration received, was held constitutional. No condition of "intention to defraud" is contained in the statute.

It has been suggested that the clause in the act, "Provided, that if such person shall deposit with the drawee of such paper within 30 days thereafter funds sufficient to meet the same with all costs and interest which may have accrued, the prosecution under this section shall be discontinued," is conclusive of the proposition that a conviction is imprisonment for debt. This suggestion is completely met by the *Barden Case, supra*. As to a similar provision, which, however, more strongly indicates imprisonment for debt, the Court says:

"The words of the statute, 'and shall fail to pay the debt secured by the same, within 10 days after such sale or disposal, or shall fail in such time to deposit the amount of the said debt with the Clerk of the Court of Common Pleas for the county in which the mortgage or lien debtor resides,' do not in strictness constitute any part of the offense; but, on the contrary, provide the mode by which the person selling or disposing of the property under lien may prevent the operation of the statute, if he sees fit to avail himself of such provision. It is in the nature of a privilege to the party selling the property, and not a requirement of the statute, that is necessary to complete the offense. But even if the foregoing words rendered the statute unconstitutional on the ground that they contravened the provision that no person shall be imprisoned for debt except in cases of fraud, there is no reason why the other portion of the statute should not remain of force. That portion of the statute which we have quoted could be eliminated without destroying the legislative intent to create an offense."

The corresponding clause in the "bogus check law" provides ample protection to one who innocently may have

broken the law, and also offers a privilege to one who has guiltily done so. It is also conclusive that only the fraud mongers were aimed at by the law.

3. The obtaining of money by a bogus check is the result of a false representation; an action therefor sounds in tort; the constitutional provision is limited to debts arising *ex contractu.*

This, in my opinion, is absolutely conclusive of the question at issue. It is universally held that the constitutional inhibition as to imprisonment for debt does not apply to cases founded upon torts committed by the defendant, although the resulting judgment for damages may be considered a debt due by the defendant to the plaintiff; the Constitution only prohibiting such imprisonment in actions arising *ex contractu.* Note, 34 L. R. A., 640.

I think that it cannot be disputed that if a man obtains money from another upon a false representation, as, for instance, upon a check which of itself is a representation that the maker has funds on deposit to meet it, the injured one may either sue upon the unpaid check *ex contractu* or *ex delicto* upon the tort, the deprivation of his property by the false representation, and this without reference to any criminal statute that may exist. If so, the liability of the "check flasher" lies in tort, and he cannot claim the protection of the constitutional immunity.

"The mere drawing and delivery of a check to a third person, without explanation is equivalent to a representation that the drawer has funds or credit in the bank, and if known to be untrue is a false pretense." Note, 17 L. R. A. (N. S.), 244, citing many cases; note, Ann. Cas., 1916E, 736.

"The weight of authority and reason is to the effect that the mere making of a check and delivering it to another to induce the other to deliver property or money to the maker is an assertion or pretense that the drawer has at the time money or credit in the bank on which the check is drawn,

and that the check will be paid by the bank upon presentation." *State v. Foxton,* 166 Iowa, 181; 147 N. W., 347; 52 L. R. A. (N. S.), 919, Ann. Cas., 1916E, 727.

In *Tryon v. Hassinger,* 1 Clark (Pa.), 184, the plaintiff made a loan to the defendant, induced by false representation in reference to certain collateral securities. The plaintiff sued, not to recover the debt, but.upon the false representations. The Court held that the action was *ex delicto,* and not *ex contractu,* and that therefore the defendant was not entitled to a discharge from imprisonment under the act abolishing imprisonment for debt.

*In Ex parte Berry,* 85 S. C., 243; 67 S. E., 225; 20 Ann Cas., 1344, the Court said:

"A few cases are to be found in which the doctrine is asserted that the inhibition against imprisonment for debt, except in cases of fraud, applies to the civil liability for torts; but the term 'debt,' as used in the Constitution, is held by the great weight of authority to embrace obligations arising out of contract, and to exclude liability for torts and fines imposed for crime. *Ex parte Holman,* 79 S. C., 9; 60 S. E., 19; Cooley on Constitutional Limitations, 341."