STATE v. REEDER.

1. LANDLORD AND TENANT—LIEN ON CROPS.—Where the rent reserved for a farm is one thousand pounds of lint cotton, the lien of the landlord is not limited to the cotton grown on the demised farm, nor enforceable thereon only primarily, but, under the express terms of the statute, covers all the crops made on the place.

2. IBID.—IBID.—NOTICE.—A person taking a lien for advances with knowledge of a rent contract between the lienor and his landlord for the farm on which the advances are to be expended, is chargeable with knowledge of the prior lien given by law to the landlord.

3. SALES OF PERSONAL PROPERTY—PRIOR LIENS.—The statute (Gen. Stat., § 2515), which prohibits any person from selling any personal property on which a lien exists, where he has notice of the lien, or unless he pays the proceeds over to such lien, applies to all persons, and not to the lien debtor alone, and applies also to sales made under junior liens.

4. CRIMINAL LAW—INTENT.—The act of selling, after notice of the prior lien, and without a proper application of the proceeds, being made criminal, the motive or intent of the seller is an immaterial inquiry.

5. SALES OF PERSONAL PROPERTY—PRIOR LIENS.—A junior mortgagee may sell under his mortgage, provided he has no notice of the senior lien, or, having such notice, applies the proceeds of sale to the older lien ; but, otherwise, his sale is a violation of this statute.

6. CRIMINAL LAW—SUBSEQUENT STATUTE.—This statute applies to all cases of sales of personal property on which a prior lien exists, and therefore applies to a case where the prior lien was obtained under the terms of a statute enacted subsequent to the statute declaring the offence.

7. IBID.—ADVICE OF COUNSEL.—A defendant cannot defend himself from a criminal charge by showing that he was advised by his legal counsel that the act was not criminal.

Before HUDSON, J., Oconee, March, 1892.

Indictment against William Reeder for selling personal property covered by a lien. The case came to this court on the following exceptions :

I. Because the contract for rent between J. G. Hendrix and A. C. Brucke, the prosecutor, being for one thousand pounds of lint cotton, constituted a prior and preferred lien only on the

cotton crop grown by said Hendrix on said lands, and on no other crop or crops, and his honor erred in not so holding.

II. Because the prosecutor, Brucke, was compelled under the terms of the contract for rent first to exhaust the cotton crop of his tenant, Hendrix, and the value of any deficiency could not be enforced as a prior and preferred lien on the crop of corn and fodder grown by said Hendrix, as against other lienees and mortgagees for advances made and expended in the production of such corn crop, and his honor erred in not so holding and charging.

III. Because the defendant, Reeder, had the legal right to seize the crop of corn of his mortgagor, Hendrix, after condition broken, and the legal title to said corn having become vested in him before receiving any notice that the landlord, Brucke, claimed a lien on same for rent, he had the legal right to sell said corn at public outcry under the authority contained in his mortgage, and his honor erred in not so holding and charging.

IV. Because the act of defendant in seizing and selling said corn under the mortgage aforesaid constituted no criminal act, but only presented a question as to the legal priority to the fund under certain liens and mortgages, which question was proper for adjudication in a civil action, and the selling of such corn at public outcry constitutes no violation of section 2515 of the General Statutes, and his honor erred in not so holding and charging.

V. Because his honor erred in charging that "if one holding a mortgage or agricultural lien, a merchant's lien upon the crop of a tenant, and knows that the farmer's lien for rent is outstanding, and knows that the rent is not paid, but, nevertheless, goes and takes that property and sells it, he violates the law."

VI. Because his honor erred in charging that "the motive and intent is not a matter of inquiry. It is the act. It is the fact. If he sells it and disposes of it, knowing that the superior lien exists, and gets it out of the way, that implies fraud."

VII. That his honor erred in charging, "It is contended here that counsel advised him what to do. That will not do. If counsel gave him the wrong advice, we can't help that."

VIII. Because a junior mortgagee, holding a legal mortgage

conferring the power and authority to seize and sell upon condition broken, may so seize and sell at public outcry after condition broken and legal advertisement, notwithstanding a prior mortgage or lien on such property, and his so doing constitutes no violation of section 2515 of the General Statutes, and his honor erred in not so holding and charging.

*Messrs. Thompson & Jaynes* and *S. P. Dendy*, for appellant.

*Mr. Ansel*, solicitor, contra.

June 28, 1892.   The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER.   The appeal in this case questions the correctness of the judgment rendered against appellant under an indictment charging him with having violated the provisions of section 2515 of the General Statutes by selling certain personal property covered by a lien.   We learn from the agreed statement of facts set out in the "Case," that one Hendrix rented from the prosecutor, Brucke, for the year 1891, certain lands for agricultural purposes, agreeing verbally to pay as rent therefor one thousand pounds of lint cotton ; and that during the spring of that year Hendrix applied for and obtained from the appellant advances in money, to be expended in the production of the crops to be grown by said Hendrix upon said lands, to the amount of seventy-five dollars, securing the payment thereof by a chattel mortgage, in the usual form, upon all his crops of corn and cotton to be grown by said Hendrix during that year on said lands, as well as about twenty-five dollars worth of fertilizers, for which he gave his note, and what purported to be a lien on said crops, though the same was not signed by the appellant, Reeder.   At the time of procuring these advances Hendrix informed Reeder of the terms of his contract with Brucke for the rent of said lands.

On or about the 25th of November, 1891, nothing having been paid on said advances, the appellant, Reeder, under the power contained in his mortgage, seized about thirty-five bushels of corn and about 250 lbs. of seed cotton, grown on the lands rented from Brucke, and immediately advertised the same for

sale under his mortgage. In the meantime the tenant, Hendrix, having failed to pay his rent in full, the landlord, Brucke, obtained from the clerk of the court an agricultural warrant and placed the same in the hands of the sheriff, with instructions, to seize the crops of said Hendrix, which the sheriff proceeded to do; but finding that the crops remaining on the rented land would, in his opinion, be insufficient to pay the balance due on the rent, he forbade Reeder from selling or disposing of the corn and cotton previously seized by him under his mortgage until the rent was settled. Reeder turned over the cotton seized by him to the sheriff, but retaining the corn, subsequently sold the same under the advice of counsel, that he would not be violating the law in so doing. Thereupon this prosecution was instituted, which resulted in the conviction of the defendant. From the judgment rendered upon this conviction, defendant appeals upon the several grounds set out in the record. These grounds are somewhat lengthy, and, under the view which we take of the case, need not be specifically stated here, though it would be well to have them incorporated in the report of the case.

As to the first ground, it will be sufficient to. say that we do not see how, under the express terms of the statute (act of 1885, 19 Stat., 146), it can be contended that, because the rent was payable in lint cotton, the lien of the landlord was confined to the cotton, for the act gives the landlord a lien "upon the crops" without reference to the manner in which the rent is to be paid. The second ground seems more appropriate to a civil action for the proceeds of the sale, in which it might become necessary to adjust the rights of conflicting lienees, and clearly has no application to a criminal prosecution for violating the provisions of section 2515 of General Statutes.

The third ground is based upon the assumption of a fact—that the condition of defendant's mortgage had been broken before defendant received notice of the prosecutor's claim for rent, which is entirely inconsistent with the fact found in the agreed statement—that Reeder was informed at the time he made the advances to Hendrix of the rent contract with Brucke, and he must be assumed to know that the law gave Brucke a prior and preferred lien for his rent. It is clear,

therefore, that for this reason, even if there were no other, the third ground cannot be sustained.

The remaining grounds of appeal, with the exception of the seventh, which will hereinafter be considered, rest upon a misconception of the true scope and correct construction of section 2515 of General Statutes, and need not, therefore, be separately considered, as it will be apparent from the view which we take of that section, that none of these grounds can be sustained. The section under consideration reads as follows: "Any person or persons who shall sell or dispose of any personal property on which any mortgage or other lien exists without the written consent of the mortgagee or lienee, or the owner or holder of such mortgage or lien, and shall fail to pay the debt secured by the same within ten days after such sale or disposal, or shall fail in such time to deposit the amount of the said debt with the clerk of the Court of Common Pleas for the county in which the mortgage or lien debtor resides, shall be guilty of a misdemeanor, and, on conviction thereof, shall be imprisoned for a term not more than two years, or be fined not more than five hundred dollars, or both, in the discretion of the court: Provided, that the provisions of this section shall not apply in cases of sales made without knowledge or notice of such mortgage or lien by the person so selling such property."

It is clear, therefore, from the terms, "*Any* person or persons," as well as from the exception contained in the proviso, that it shall not apply where the person making the sale has no knowledge or notice of the antecedent mortgage or lien, that the section forbids, not only the mortgage or lien debtor from selling personal property covered by a mortgage or lien without complying with the terms of the section, but also any other person, as the mortgage or lien debtor must necessarily have knowledge or notice of the mortgage or lien. Hence, although the defendant here was not the mortgage or lien debtor, the section applies to him; and, indeed, no question seems to have been raised as to this. It seems to us that the language of the section above quoted leaves no room for doubt that there was no error on the part of his honor, Judge Hudson, in instructing the jury that "if one holding a mortgage or agri-

cultural lien, a merchant's lien upon the crops of a tenant, and knows that the farmer's lien for rent is outstanding, and knows that the rent is not paid, but, nevertheless, goes and takes that property and sells it, he violates the law;" for that is exactly what the statute forbids all persons from doing, under pain of a conviction for misdemeanor, unless he, within the prescribed time, either pays the amount due upon the preferred lien or deposits the same with the clerk of the court, and it is not pretended here that defendant did either.

Nor do we see that there was any error on the part of the Circuit Judge, as is imputed in the sixth ground of appeal, in saying to the jury that "the motive and intent is not a matter of inquiry. It is the act. It is the fact. If he sells it and disposes of it, knowing that the superior lien exists, and gets it out of the way, that implies fraud." For it will be observed that this statute, unlike many other penal statutes, contained no language implying that the act forbidden must be done wilfully or maliciously, or with intent to defraud, in order to make it criminal; but it simply forbids the doing of a certain act, without any words of qualification whatsoever, and in the absence of any such words the court has no power to supply them. Owing, probably, to the fact that personal property generally may be so easily transported from one place to another, and thus placed beyond the reach of those having a prior or preferred lien upon it, the legislature has seen fit to prohibit absolutely its sale by any person, unless provision is made, as prescribed by the statute, for the payment of such preferred lien, without regard to the intent of the person who makes the sale; and courts are not at liberty to disregard such a plain mandate of the lawmaking power by interpolating into the statute, by construction, other provisions than those which the legislature has seen fit to make. Besides, a person is always presumed to intend the natural, necessary, and even probable consequences of the act which he does.

The appellant in his eighth ground of appeal seems to assume that under the rulings of the Circuit Judge a junior mortgagee could not, after condition broken, seize and sell the mortgaged property, where it is covered by a prior mortgage,

without a violation of section 2515 of General Statutes, and this, it is claimed, is error. In the first place, there is no warrant for any such assumption in anything contained in the charge of the Circuit Judge. On the contrary, the plain inference is that a junior mortgagee may sell if he has no notice of the prior lien, or if he complies with the condition prescribed in the statute, by making provision for the payment of the antecedent lien. But, in the second place, if it is intended by this ground of appeal to assert the doctrine that a junior mortgagee may sell without regard to the question of notice, or without making the provision required by the statute for the preferred lien, then we have only to say that such a doctrine is directly in the teeth of the express terms of the statute.

: Finally, it is contended by the appellant that section 2515 of General Statutes applies only to liens provided for by legislation previous to the adoption of the General Statutes, and as by such legislation a landlord had no lien for rent, unless in writing and properly indexed, that section can afford no protection to the landlord in this case, as his lien was not in writing, nor was it indexed. We do not think there is any ground for such contention. The section under consideration is a general law, designed to prohibit the sale of personal property covered by any valid prior or preferred lien, without regard to the time when it was established, or how it arose. There is not a word in the section confining its operation to any particular class of liens, but its language—"on which *any* mortgage or *other* lien exists"—is broad enough to cover a lien created after the enactment of the General Statutes as well as one provided for before. Under a charge for violating this section, the question is whether the party charged has sold personal property "on which any mortgage or other lien exists," without complying with the conditions prescribed in the section; and it is wholly immaterial to inquire when such lien arose, provided it exists at the time the property covered by it was sold.

It only remains to inquire whether there was any error on the part of the Circuit Judge, as claimed in the seventh ground of appeal, in instructing the jury that the fact that defendant, in making the sale, acted under the advice of

counsel, would not avail him. It would, indeed, be a dangerous doctrine to establish, that a person charged with a violation of the criminal law could shield himself from the penalty prescribed by showing that he had acted under the advice of counsel; and we could not be induced to recognize such a doctrine, except by some authoritative decision which we should feel bound to follow. But no such decision has been brought to our attention. The only authority cited by appellant's counsel, as to this point, is the case of *United States* v. *Conner*, 3 McLean, 573. In that case, however, the defendant was indicted for perjury, in having omitted from his schedule, filed for the purpose of taking the benefit of the bankrupt act, certain property which, after submitting the facts concerning his property, fairly and honestly, to his counsel, he was advised, erroneously, as the event proved, should be omitted, and it was held that the necessary element of *wilful* false swearing being thus shown to be absent, he could not be convicted of perjury. But that is a very different case from this, and even if authoritative here, would not control this case. We can very readily understand, however, that there may be cases (and this is probably one) in which a party has violated the law through erroneous advice of counsel, and is, in fact, free from any moral guilt; but while this may constitute a strong ground for an appeal to another department of the government, it cannot be permitted to influence the decision of a court in construing a statute.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.