## 11853

### STATE v. DUCKETT

#### (130 S. E., 340)

1. CRIMINAL LAW—DILIGENCE IN EFFORTS TO FIND EVIDENCE LATER PRODUCED AS AFTER DISCOVERED ON MOTION FOR NEW TRIAL HELD SUFFICIENTLY SHOWN.—In prosecution of bank officer, under Cr. Code 1922, § 258, for making of unauthorized loan, where new trial was sought on ground of after-discovered evidence consisting of written approval of loan by directors, diligence in prior efforts to find such approval *held* sufficiently shown. ·

2. BANKS AND BANKING—INTENT OF OFFICER BORROWING MONEY FROM BANK WITHOUT PROPER "APPROVAL" OF DIRECTORS TO DEFRAUD NOT ESSENTIAL TO OFFENSE UNDER STATUTE.—Under Cr. Code 1922, § 258, declaring violation of Civ. Code 1922, § 4000, prohibiting officer of bank from borrowing therefrom without approval in writing of two-thirds of board of directors, a crime, intent of officer to defraud is not essential, and, where directors' approval of loan was in blanket form and not made in contemplation of any particular loan, it was insufficient to protect borrower; "approval" implying knowledge and exercise of discretion after knowledge.

Before TILLMAN, COUNTY JUDGE, September, 1924 and DEVORE, CIRCUIT JUDGE, April, 1925. Affirmed.

O. D. Duckett was convicted of violation of the banking laws and he appeals.

*Mr. Joseph Murray* for appellant.

*Messrs. Marshall F. Sanders, County Court Solicitor,* and *H. S. Blackwell, Circuit Court Solicitor,* for respondent.

November 5, 1925.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE R. O. PURDY.

The Bank of Coronaca, in Greenwood County, was organized with a capital stock of $25,000. The first meeting of the directors was held on February 5, 1920. At this meeting, it was directed that 20 per cent. of the capital stock be paid in on or before February 15th, and the remaining 80 per cent. on or before March 1, 1920. At that meeting the defendant was elected as vice president. All of which is shown by the minutes of the bank. The minutes of June 15, 1920, also shows the following at the conclusion of the minutes: "After approving loans made by Mr. O. D. Duckett, the meeting was adjourned." The minutes of that date also show that certain excess loans to different persons were approved, but none of these loans were made to the defendant.

The bank afterwards went into liquidation, and the defendant was indicted and was tried in the County Court for Greenwood County on September 15, 1924, Hon. H. C. Tillman presiding, upon an indictment which contained eight counts, the eighth count charging that "on March 17, 1922, the said O. D. Duckett, being a director and president of the Bank of Coronaca, did wilfully and unlawfully borrow from the said bank $2,500, the same being in excess of the amount of capital actually paid in and including the surplus of said bank and without the approval of the directors by a two-thirds vote thereof," in violation of Section 258 of the Criminal Code of Laws of South Carolina, 1922.

At the close of the testimony for the State, the defendant moved for a directed verdict in his favor, on the ground that

the State had failed to make out a case on either of the eight counts alleged in the indictment, and the defendant exhibited to the Solicitor a written approval signed by two-thirds of the directors of the bank for each of the loans set out in the first seven counts, and which, by permission, were put in evidence, and the presiding Judge directed a verdict in favor of the defendant upon each of those seven counts, leaving only the eighth and last count on which the motion to direct a verdict in favor of the defendant was refused.

The jury returned a verdict of guilty as to the eighth count, and the defendant made a motion for a new trial, based upon the absence of any testimony tending to show that two-thirds of the directors of the bank had not in writing approved the loan to the defendant as set out in the eighth count of the indictment. The motion was overruled, and the defendant was sentenced to six months at hard labor. Two days after his conviction, and during the same term of Court, a motion was made for a new trial on the ground of after-discovered evidence which motion was overruled, and on appeal to the Circuit Court for Greenwood County the judgment of the County Court was sustained and the cause was remanded to that Court for the enforcement of the sentence.

While the indictment charges that the money was borrowed on the 17th day of March, 1922, the defendant states in his examination:

"I borrowed this money in the early spring of 1920, after the bank was organized; about March 4, 1920, I think."

And he contended that there was an approval in writing by the directors. The defendant testified in part as follows:

"Q. Was there an approval in writing by the directors for this loan? A. Yes, sir.

"Q. Where is that approval? A. The approval was

turned over to Mr. Blake, the cashier. He is dead. There
have been two cashiers since that time.

"Q. Have you tried to find that approval since that? A.
Yes, sir; I hunted for it at the same time I found these
other approvals. We couldn't find it anywhere.

"Q. At that time did you know that there was an ap-
proval in writing for this loan? A. Yes, sir.

"Q. Did you see it? A. Yes, sir.

"Q. To whom was it delivered? A. It was given to
Mr. Blake, the cashier, who was the proper party to hold it,

"Q. Who succeeded Mr. Blake as cashier? A. Mr.
Stuart, and I have inquired of him for it and he could not
find it.

"Q. The directors had their meeting and approved the
loan to you by the minutes? A. The loan was approved in
writing by the full board.

"Q. Before you obtained the loan? A. Yes, sir. We
got the approval at the time or as soon afterwards as possi-
ble."

He went further and said that he had made search for
this approval and could not find it, but stated that he dic-
tated the approval to the stenographer at the People's Bank,
wrote it out, and had it signed by the full board of direc-
tors. He said that the full capital stock of $25,000 was
paid in. He had been in the banking business, he said,
about 17 years, and knew that such loans must be approved.
Loans of this kind did not appear on the minute book.
They were kept separate. The bank examiner passed these
loans and always called for the approvals. He said further,
in reference to the loan, that it was made on March 4, 1920,
and continued to be an outstanding loan through March,
1922.

A motion for a new trial on after-discovered evidence
was based upon the approval which was found on a further
search of the bank's effects two days after the defendant

was convicted and while the Court was yet in session. That approval is as follows:

"Coronaca, S. C., February 5, 1920.

"We, the undersigned directors of Bank of Coronaca, Coronaca, S. C., do hereby authorize E. W. Gregory, president, or O. D. Duckett, vice president, and T. S. Blake, cashier, to make loans to any officer or director of Bank of Coronaca, or any firm, company or corporation of which any director or officer is a member or officer, on security that they regard to be safe, any amount not exceeding the amount provided by law. We hereby approve all loans which may be made from time to time as authorized herein. [Signed] T. S. Blake, O. D. Duckett, M. C. Willard, E. W. Gregory, J. O. Owens, W. H. Harvley, J. F. Outz, Jr. These being all of the directors of said bank."

In passing upon the matter, Judge Tillman said:

"I do (not?) think this constitutes a sufficient showing of due diligence on his part. The main ground I wish to put my refusal to grant this motion on, and I wish to make it clear, so that it can be taken advantage of before the Supreme Court, is:

"That the paper, under no construction, can be considered as a valid approval by the board of directors, for the loan made. The paper is dated February 5, 1920. The evidence is that this loan was not made until March 4, 1920, practically one month later. There is no evidence that at the time the paper was signed that the loan was even in contemplation, because the minutes of the bank show that at that time the bank had no money in hand; the minutes show that the first call of 20 per cent. was made to be paid February 15th and the second call of 80 per cent. to be paid on March 1st.

"If a board of directors can, before any of the money even is paid into a bank, by signing their names to a piece of paper, nullify every Act of the Legislature to protect the

depositors and stockholders of that bank, then the Supreme
Court will have to say they can do it, for I will not.

"For that reason the motion is overruled."

As before stated, on appeal to the Circuit Court, the order
of Judge Tillman was sustained, and the defendant now
appeals to this Court upon a number of exceptions which
from the view of the case taken by the Court, need not be
repeated at length. They impute error in not granting a
new trial, for the reasons stated, alleging, among other
things, that there was no testimony to submit to the jury,
that there was an abuse of discretion, and that there was
error in holding that the defendant had not used due
diligence to obtain the approval before the trial, and that
the paper could under no construction be considered as a
valid approval by the board of directors for the loan made.

The case is serious and puzzling. In the first instance,
the jury might have accepted the version of the defendant,
in the absence of the paper containing the approval of the
board, and have acquitted him; but it did not accept his
version, and convicted him.

It cannot be said that there was no evidence to sus-
tain the conviction. We think that the defendant
has shown that he used all diligence, in good faith,
to procure the approval and have it at the trial, in his de-
fense. That he then continued to use due diligence in
attempting to find the approval is manifest.

In support of the motion for a new trial, the defendant
submitted an affidavit containing a full recital of his con-
nection with the matter and showing his good faith in at-
tempting, before the trial, to obtain this written approval,
and his continued efforts after the trial, which resulted in
finding it. He also submitted an affidavit of Mr. Mont-
singer, who assisted him in searching for and finally finding
the approval. Mr. Murray, of counsel for the defendant,
in his affidavit, also shows that the defendant had shown
evidence of diligent search for the approval and had been

unable to find it prior to the trial, and that he, himself, had made diligent search for it and had used every practical means of obtaining it, so as to have it at the trial, and that he is firmly of the opinion that if it could have been produced, Mr. Duckett would have been acquitted, and expresses his conviction that if a new trial be granted and the approval admitted the defendant will be acquitted.

The affidavit of Mr. W. W. Bradley State Bank Examiner, was also submitted. He said in his affidavit that the form purporting to be the authority conferred by the board of dircetors of the Bank of Coronaca upon the officers of the bank permitting the officers to make legal loans to officers and directors—this form bearing date February 5, 1920—is substantially the form which was in use by the bank examiner's department through the administration of Mr. Mauldin, Mr. La Rouque, and Mr. Craig, and that the same has been continued in use during the administration of deponent.

This might have been a complete protection to the defendant, and there might have been an abuse of discretion on the part of Judge Tillman, could the matter of intent affect the issue. Section 4000 of the Civil Code provides:

"No director or other officers of any such bank shall borrow therefrom, except on good security, to be approved in writing by two-thirds of the whole board of directors of such bank, and no director or other officer of any such bank shall become an indorser or surety upon any loan or credit made or extended to any other director or officer of such bank."

Section 258 of the Criminal Code provides:

"If any director or other officer of any bank incorporated under the statutes of the State providing for 'banking companies' shall be convicted upon indictment of directly or indirectly borrowing therefrom, except on good security, approved in writing by two-thirds of the whole board of

directors of such bank; or shall become an indorser or surety upon any loan or credit made or extended to any other director or officer of such bank; or shall borrow from such bank, or lend to any of its directors, or any firm of which such director is a member, or any company or corporation of which such director is an officer, an amount or amounts exceeding at any one time one-tenth part of the capital stock of such bank actually paid in, in violation of Sections (3999) and (4000) of the Civil Code, he shall be punished by fine or imprisonment, or by both fine and imprisonment, at the discretion of the Court."

It will be seen, therefore, that the question of intent is not a necessary element of the offense. If an act be done by which the terms of the statute are violated, the offense is complete, regardless of the intent.

Although the subjects are different, the statute is analogous to Section 172 of the Criminal Code, which makes it a misdemeanor for any person to sell or dispose of any personal property on which any mortgage or other lien exists, without the written consent of the mortgagee or lienee, or the owner or holder of such mortgage or lien, without paying the debt or depositing the amount of the debt with the Clerk of Court within ten days after such sale or disposal. This statute was thoroughly discussed in the case of the *State v. Reeder.* Reeder had taken a lien for advances and seized and sold a small part of the crop which was covered by his lien, and with notice of an outstanding lien for rent, which had not been paid in full. He was indicted and convicted of selling property under lien. Held: That the motive or intent of the seller would not protect him, nor could the fact that he had acted under the advice of counsel protect him. *State v. Reeder, 36 S. C., 497; 15 S. E., 544.*

So likewise here, it appears that the defendant had acted under a form of approval recognized and used in the conduct of banks. Yet, when the mandate of the statute is

invoked, the statute must govern, and the fact that the defendant followed a proceeding recognized and established, with no intent to defraud, cannot absolve him from the penalties fixed by statute. Approval implies knowledge and, in this case, the exercise of discretion after knowledge. To approve beforehand would be without knowledge and without the exercise of discretion.

No matter how disagreeable it is to pronounce a judgment like this, when the law requires it, it has to be done.

The exceptions must therefore be overruled, and the judgment is affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.