128 N.J. Super. 35 (1974)
318 A.2d 795
LINCOLN HIGHWAY REALTY, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 17, 1974.
*37 Mr. David M. Baer for plaintiff (Messrs Baer and Arbeiter, attorneys).
Mr. Alan B. Rothstein, Deputy Attorney General, argued the cause for defendant (Mr. William F. Hyland, Attorney General, attorney).
ANTELL, J.S.C.
On this motion plaintiff asks summary judgment for specific performance of an option to purchase, allegedly exercised by the defendant. Defendant responds that because the option was not exercised in the manner prescribed by statute the facts presented do not give rise to an *38 enforceable agreement. There is no genuine issue as to the following material facts.
In June 1967 plaintiff entered into a 25-year lease agreement with the New Jersey Commission for the Blind, a state agency. Paragraph 36 contains the following provision:
Landlord grants unto the Tenant the option to purchase the leased premises for the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), such option to be exercisable only during the sixth year of the term of the Lease Agreement, and if not then exercised then this Option shall be null and void * * *.
On May 11, 1973 the Director of the Division of Purchase and Property wrote the following letter to the plaintiff:
Gentlemen:
In accordance with paragraph Thirty-six as contained in the lease agreement dated June, 1967 this letter will serve as formal notice that the State of New Jersey intends to exercise the purchase option in accordance with the said paragraph for the sum of $250,000.00.
On May 17 plaintiff acknowledged the foregoing and supplied information requested by the Director's letter. Nothing further transpired until June 27, 1973 when plaintiff inquired by letter of the Director as to the proposed schedule for the performance of their respective obligations. The Director replied on June 28, 1973:
Since May, 1973, when I wrote you concerning the above captioned premises, I have had several appraisals completed concerning the property. On the basis of these appraisals and all other pertinent facts considered, I must withdraw my original offering of $250,000.00 and resubmit a new offering of $180,000.00 for the concerned property.
Ordinarily, these circumstances would leave little doubt as to the lessor's right to relief. But this defendant is a governmental body, the powers of which are created and limited by law, and the provisions of N.J.S.A. 52:34-6 et seq. are applicable. Section 6 provides:
All purchases, contracts or agreements, the cost or contract price whereof is to be paid with or out of State funds shall, except as otherwise provided in this act, be made or awarded only after public advertisement for bids therefor, in the manner provided in this act.
*39 Section 7 authorizes the Director of the Division of Purchase and Property to proceed without advertising where the aggregate amount does not exceed $2,500. This is one exception. The other is created by section 8, and it is this section with which we are here concerned. It provides:
Any such purchase, contract or agreement where the cost or contract price exceeds $2,500.00 may, with the written approval of the State Treasurer, be made, negotiated or awarded by the Director of the Division of Purchase and Property without advertising when the subject matter thereof is that described in section 4 of this act. [N.J.S.A. 52:34-9] * * * [Emphasis supplied]
N.J.S.A. 52:34-9(d) specifies as subject matter appropriate for the foregoing exception:
* * * the acquisition of any real property by gift, grant, purchase or any other lawful manner in the name of and for the use of the State for the purpose of the administration of the State's business in accordance with appropriations made therefor when moneys are required for the acquisition * * * [Emphasis supplied]
The substance of these statutory excerpts requires that all state contracts involving more than $2,500 be awarded only after a public advertisement for bids except where the subject matter is the acquisition of real property. The exception is made subject to two conditions: (1) that the Director act with the written approval of the State Treasurer, and (2) in accordance with appropriations made therefor. It is conceded that neither of the conditions has been satisfied. The question presented is whether these failures constitute a legal defense to the action.
That no appropriation was made for the proposed acquisition does not bar the entry of a judgment against the State, even though its satisfaction may depend upon the willingness of the Legislature to accept the judgment and provide for payment. P, T & L Const. Co. v. Comm'r, Dept. of Transp., 55 N.J. 341, 346 (1970). It will not be assumed that a coordinate branch of government will be indifferent to the judgments of the courts.
*40 Issues of a different order arise from the lack of written approval by the State Treasurer.
The requirement of competitive bidding reflects a legislative purpose to preserve to the State all the economic benefits of full and free competition and to guard against favoritism, improvidence, extravagance and corruption in the awarding of contracts. These statutes are enacted for the benefit of the taxpayers and should be construed with sole reference to the public good. Hillside Tp. v. Sternin, 25 N.J. 317, 322 (1957). However, in recognition that the inexpedience of this safeguard might sometimes outweigh its advantages, provision has been made sanctioning departures where defined justifications appear. In those cases the acquiescence of the State Treasurer is substituted to serve the prophylactic function provided by competitive bidding as a condition of the Director's power to contract on behalf of the State. This does not suggest a legislative intent to abandon the goals and benefits advanced by the former procedure. Nothing, in fact, could more clearly reveal the Legislature's continued preoccupation with those values than the plain and unambiguous mandate of section 8, by which the power of the Director to award contracts without competitive bids comes about only under carefully specified circumstances, and only where the designated official of cabinet rank confers his written approval.
Plaintiff's argument that the only purpose of requiring written approval is to inform the State Treasurer as to the movement of all state funds is not convincing. If this is all that was intended it would have been sufficient for the Legislature to require only that notice of such contracts be given to the State Treasurer, as it did for the State Auditor in N.J.S.A. 52:34-11, providing that:
Notice of such purchases, contracts or agreements made, negotiated or awarded under section 3 of this act [N.J.S.A. 52:34-8], and written approvals thereof, shall be given to the State Auditor.
By requiring his "approval" the lawmakers clearly intended to protect the public interest by drawing upon the *41 judgment of the State Treasurer and validating the transaction only upon his watchful concurrence in the judgment of the Director. This condition is not merely a matter of form. Its fulfillment is vital to the very conception of any power in the Director to contract for the acquisition of property except after a public solicitation of bids. The court will not read this exception in the statute as having been intended to dilute the underlying policy of the law to the point that it is defeated. E.g., Suburban Golf Club v. State Highway Comm'r, 92 N.J. Super. 125, 134 (Law Div. 1966). We are governed by the rule that a public officer can make for the government he represents only such contracts or agreements expressed or implied as he is authorized to make. State v. Erie R.R., 23 N.J. Misc. 203, 213, 42 A.2d 759 (Sup. Ct. 1945).
405 Monroe Co. v. Asbury Park, 40 N.J. 457 (1963), presents somewhat comparable facts. There a 25-year lease had been entered into pursuant to an ordinance passed by defendant municipality. Defendant, which at the time was under the control of the Municipal Finance Commission, sought to disaffirm on the ground of illegality arising from the enactment of the ordinance "without the assent in writing of the commission," in the face of a statutory prohibition thereon. Although the defense was rejected by the court for deficiencies of proof in that case, the court's language at pages 467-468 of the opinion is alive with the proposition that the failure to obtain "assent in writing" would have precluded formation of a contract.
From a detached view the result here reached should cause no offense to an equitable sense of justice. Even assuming its availability against a governmental agency, the prerequisites to an estoppel have not been proven. Certainly, no injurious change of position by plaintiff occurred in reliance upon the Director's letter of May 11, 1973 to the date of its revocation on June 28, 1973. Furthermore, the limitations upon his authority can hardly be said to have been concealed from *42 plaintiff's knowledge. As the court observed in State v. Erie R.R., supra:
`Statutes delegating powers to public officers must be strictly construed, and all persons dealing with public officers must inform themselves as to their authority, and acts which are within the apparent but in excess of the actual authority of officers will not bind the government which they represent, unless ratified by it.'

* * * * * * * *
The defendant knew or should have known the limitation of the powers of the state's agents. The rule is stated as follows in 59 Corp. Jur. 173: `The powers of state officers being fixed by law, all persons dealing with such officers are charged with knowledge of the extent of their authority or power to bind the state and are bound at their peril to ascertain whether the contemplated contract is within the power conferred.' [23 N.J. Misc. at 213]
Also see Driscoll v. Burlington-Bristol Bridge Co., 10 N.J. Super. 545, 569 (Ch. Div. 1950), mod. other grounds 8 N.J. 433 (1952), cert. den. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652-53 (1952), reh. den. 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952); Hume v. United States, 132 U.S. 406, 414, 10 S.Ct. 134, 33 L.Ed. 393, 397 (1889); 81 C.J.S., States, § 113; 63 Am. Jur.2d, Public Officers and Employees, § 271; e.g., 10 McQuillin Municipal Corporations (rev. vol. 1966), § 29.04.
No rights or relationships are projected by plaintiff's claim which merit vindication by a court of equity. It is an instance where the maxim prevails that equity follows the law.
Courts of equity may no more disregard statutory and constitutional requirements and provisions than can courts of law. They are bound by positive provisions of a statute equally with courts of law, and, where the transaction or the contract is declared void because not in compliance with express statutory or constitutional provision, a court of equity will not interpose to give validity to such transaction or contract or any part thereof. Wherever the rights of the parties are clearly governed by rules of law, courts of equity will follow such legal rules. [2 Pomeroy, Equity Jurisprudence § 425, at 189-190 (1941)]
Also see 1 Story's Equity Jurisprudence § 64 (1918).
Plaintiff's motion for summary judgment, for the reasons given, is denied.