OAHE CONSERVANCY SUBDISTRICT of the State of South Dakota, Plaintiff and Appellant,

v.

William J. JANKLOW, Governor of the State of South Dakota; State of South Dakota Acting by and through its Department of Water and Natural Resources; Warren R. Neufeld as Secretary of the Department of Water and Natural Resources; State of South Dakota Board of Water and Natural Resources; Mark V. Meierhenry as Attorney General of the State of South Dakota; Defendants and Appellees.

No. 13277.

Supreme Court of South Dakota.

Argued April 22, 1981.

Decided July 15, 1981.

Benjamin Stead, Pierre, for plaintiff and appellant; B. Elizabeth Ganje, Aberdeen, on brief.

Daniel J. Doyle, Asst. Atty. Gen., Pierre, for defendants and appellees; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

**FOSHEIM, Justice.**

This is an appeal from a declaratory judgment interpretating the duties of the State Board of Water and Natural Resources (Board) and the Oahe Conservancy Subdistrict (appellant) pursuant to SDCL 46–18–38 and 46–18–42. We affirm.

The Oahe Conservancy Subdistrict is a political subdivision of the State of South Dakota created pursuant to the provisions of SDCL ch. 46–18 with the authority and duty to enter into and execute contracts to study, acquire land, construct, operate and maintain water resource development projects. To fund its functions, the Subdistrict is vested with the power to levy a tax of up to one mill against all taxable property situated within the Subdistrict.

The State Board of Water and Natural Resources was created by SDCL 1–40–5 and 1–40–9 [1] to perform all the functions of the former Board of Directors of the South Dakota Conservancy District, which includes reviewing the contracts and budgets of the appellant subdistrict. All proposed subdistrict contracts (SDCL 46–18–38 [2]) and

1. SDCL 1–40–5 reads:

The board of natural resource development is abolished. There is created a water and natural resources board. The board shall perform all functions exercised by the former board of natural resource development. The water and natural resources board shall consist of seven members not all of the same political party and appointed by the Governor for four-year terms. The terms of members of the water and natural resources board who are first appointed after the effective date of this order shall be: one appointed for a term of one year; two appointed for a term of two years; two for a term of three years; and two for a term of four years, and such initial terms shall be designated by the Governor. Any member appointed to fill a vacancy arising from other than the natural expiration of a term shall serve for only the unexpired portion of the term.

SDCL 1–40–9 reads:

Except as provided in § 1–40–10, the department of water and natural resources shall, under the direction and control of the secretary of water and natural resources, perform all the functions of the following former boards:

(1) The state oil and gas board, created by chapter 45–8;

(2) The board of directors of the South Dakota conservancy district, created by chapter 46–17.

2. At the time this action was commenced, SDCL 46–18–38 provided:

A favorable vote shall be a majority of the votes cast on the question of contracting authority. Such favorable vote shall authorize the subdistrict board of directors to enter into and execute contracts for the payment of all or any part of the costs incurred or to be incurred in the studies, investigations, acquisition or land, construction, operation and maintenance of desirable water resource development projects within the subdistrict, subject to approval of each proposed contract by the district board, and to levy a tax within the limitations imposed by this chapter in support of such contracts. If the financial obligations to be incurred as a result of the execution of contracts do not extend beyond the then current fiscal year of the subdistrict or can be paid from revenues presently accruing to the subdistrict under provisions of this chapter, the subdistrict board shall have the authority to enter into contracts without approval of the electorate for contracting authority as provided in this section and § 46–18–37.

budgets (SDCL 46–18–42[3]) must be approved by the Board. Accordingly, at the Board's August 21, 1979, meeting, the Subdistrict submitted its proposed 1980 budget and six contracts for the Board's approval. The proposed budget was within the one mill limit.

Included in the Subdistrict's budget was an item which provided $300,000 for a continuing construction fund. This fund was established to provide money for four of the six contracts submitted to the Board. The four contracts obligated the Subdistrict to provide grants of up to five percent of the costs of these projects, if the Farmers Home Administration approved the four rural water systems' applications for financing.

The Board approved the six contracts and proposed budget with the exception of the continuing construction fund which was reduced to $100,000. Appellant's principal contention is that SDCL 46–18–38 and 46–18–42 were intended to grant the Board only ministerial authority in the approval process of the Subdistrict contracts and budget—limited to a determination that the contracts were in proper form—and that the budget does not exceed the prescribed levy. Appellees argue, as the trial court held, that the authority to approve connotes an exercise of discretion and judgment, unless otherwise limited in the context of the statute. This appeal, therefore, centers first around the interpretation and scope to be given the word "approval."

 In arriving at the intention of the Legislature, it is presumed that the words of the statute have been used to convey their ordinary, popular meaning. *Wood v. Waggoner,* 67 S.D. 365, 293 N.W. 188 (1940). SDCL 2–14–1 requires that words in a statute are to be understood in their ordinary sense.

 It is generally held that statutes which vest "approval" authority imply a discretion and judgment to be exercised to sanction or reject the act submitted. *Gustafson v. Wethersfield Tp. High School Dist.,* 319 Ill.App. 255, 49 N.E.2d 311 (1943); *Russ v. Woodard,* 232 N.C. 36, 59 S.E.2d 351 (1950). The very act of "approval," unless limited by the context of the statute providing therefor, imports the act of passing judgment and the use of discretion, and a determination as a deduction therefrom, *Fuller v. Board of University and School Lands,* 21 N.D. 212, 129 N.W. 1029 (1911), and does not contemplate a purely ministerial act. *Baynes v. Bank of Caruthersville,* 118 S.W.2d 1051 (Mo.App.1938). The word "approval" in a statute must be given its usual and accepted sense, where neither the context nor the apparent intention of the Legislature justifies any departure from the ordinary meaning, which is the opposite of "disapproval" and necessarily involves the exercise of discretionary power. *McCarten v. Sanderson,* 111 Mont. 407, 109 P.2d 1108 (1941). It implies a final, direct, affirmative sanction. *Leroy v. Worcester St. Ry. Co.,* 287 Mass. 1, 191 N.E. 39 (1934). *See also: County Council of Baltimore County v. Egerton Realty, Inc.,* 217 Md. 234,

---

This statute was amended by 1980 S.D.Sess. Laws, ch. 306, § 6.

3. SDCL 46–18–42 reads:

The board of directors of the subdistrict shall at the time of the organization of the board and as of December thirty-first of that year, and annually thereafter, prepare an operations and budget report, including estimates and itemizations of all the expenses and obligations of the subdistrict, including, but not limited to, expenses of directors, expenses of operating the office, debt service and retirement, and obligations and liabilities to the United States for which provisions must be made. After the subdistrict shall have entered into any contract with the United States, the subdistrict board of directors may include in such budget funds deemed necessary to create a reserve fund to meet future payments under such contract. Upon completion and adoption of such budget, the subdistrict board of directors shall secure approval of such budget from the South Dakota conservancy district board of directors and upon approval shall make a tax levy in dollars sufficient to meet such budget, provided that such levy shall not be in excess of the limitation specified in this chapter. Such tax levy shall be in the form of a resolution, adopted by a majority vote of the members of the board of directors of the subdistrict.

This statute was amended by 1981 S.D.Sess. Laws, ch. 323.

140 A.2d 510 (1958); *Morgan County Commission v. Powell*, 292 Ala. 300, 293 So.2d 830 (1974) and *Lincoln Highway Realty, Inc. v. State*, 128 N.J.Super. 35, 318 A.2d 795 (1974); *State v. Duckett*, 133 S.C. 85, 130 S.E. 340 (1925).

Looking at the legislative history of the statutes, as we may, in ascertaining their meaning, *Elfring v. Paterson*, 66 S.D. 458, 285 N.W. 443 (1939), we find that SDCL 46–18–38 was originally enacted in 1959 S.D.Sess.Laws, ch. 453, § 24. It then required that each subdistrict contract be approved by the subdistrict board, by the State Conservancy District Board, and by a sixty percent favorable vote of the Subdistrict. In 1966, the law was amended to provide that if the Subdistrict obtained general contracting authority pursuant to SDCL 46–18–37, it could enter into contracts for water development projects. Under the amendment, these Subdistrict contracts required approval only by the Board. Subdistrict contracts therefore have a consistent history of being subject to some approving authority.

The legislative committee report on the original Conservancy District Act reads, in part:

> One of our basic beliefs in South Dakota is in a maximum of local control of public endeavors. At the same time, we have kept in mind the principle that as state legislators we have an obligation to protect individual property rights, to keep taxes within reasonable limits and to provide for a fair sharing of costs and responsibilities.
>
> . . . .
>
> It is equally imperative that as Legislators we provide enabling legislation for those who want such projects, and at the same time *assure the fullest protection for those who do not favor this type of project development.* [Emphasis supplied.]

1957–58 Legislative Research Council Reports, Report of the Agriculture and Conservation Committee, p. 9. That report indicates a desire on the part of the Legislature to balance maximum local control with checks on taxes and any invasion of property rights. Such concerns would have little significance if the approval provisions were intended to confer a purely ministerial function of making certain the contracts and budget did not violate the mill levy limit.

In that vein, we note that SDCL 46–18–42 requires the Subdistrict to obtain budget approval from the Board prior to the adoption of its tax levy resolution. If, the Board's "approval" was confined to the simple function of making certain that the proposed tax levy was within the statutory mill limit, then the Legislature would logically have required that the Subdistrict adopt its tax levy resolution before submitting its budget for consideration by the Board. The statutory procedure adopted indicates the Legislature intended that the approval authority of the Board would likely affect the ultimate amount of tax to be levied.

■ SDCL 1–40–10 directs the Board of Water and Natural Resources to perform all quasi-legislative, quasi-judicial, advisory, and special budgetary functions of the former board of directors of the South Dakota Conservancy District. SDCL 46–18–38 relates to contracts. SDCL 46–18–42 speaks of the Subdistrict budget. We conclude that in the enactment of both, the Legislature used the word "approval" in its generally accepted sense and intended to grant the Board more than ministerial powers and effectively conferred discretionary authority.

■ This brings us to the issue whether vesting the Board with such judgment and discretion constitutes a delegation of legislative power in violation of art. III, § 1 of the South Dakota Constitution.[4]

In *Boe v. Foss*, 76 S.D. 295, 313, 77 N.W.2d 1, 11 (1956), we expressed the rule

---

4. Art. III, § 1 of the South Dakota Constitution reads, in part:

The legislative power of the state shall be vested in a Legislature which shall consist of a senate and house of representatives[.]

prevailing in this state since territorial days.

Inherent in the division of our state government into three distinct departments by Art. II of our constitution is the principle that the Legislature cannot abdicate its essential power to enact basic policies into law, or delegate such power to any other department or body. Equally as fundamental and settled is the principle that having written broad policy into law the Legislature, in the execution of that policy, can delegate quasi-legislative power or functions to executive or administrative officers or agencies, provided it adopts understandable standards to guide its delegate in the exercise of such powers. *Territory ex rel. Smith v. Scott*, 3 Dak. 357, 20 N.W. 401; *Davenport v. Elrod*, 20 S.D. 567, 107 N.W. 833; *Brookings County v. Murphy*, 23 S.D. 311, 121 N.W. 793; *St. Charles State Bank v. Wingfield*, 36 S.D. 493, 155 N.W. 776; *Application of Dakota Transportation, Inc.*, 67 S.D. 221, 291 N.W. 589; *Utah Idaho Sugar Co. v. Temmey*, 68 S.D. 623, 5 N.W.2d 486; and see *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; 27 Yale L.J. 892; 24 Corn.L.Q. 13.

■ Difficulty for both law-making bodies and the courts arises in the application of those principles. In *Boe v. Foss, supra*, we quoted with approval from an article by Professor Cheadle:

"Congress may not delegate the choosing of policies nor the duty of formally enacting the policy into law, but it may formulate that policy as broadly and with as much or as little detail as it sees proper and it may delegate the duty of working out the details and the application of the policy to the situation it was intended to meet. The rule, therefore,—so far as there may be said to be a rule against the delegation of legislative powers—is not a prohibition against delegations of legislative functions or of the duty to do acts legislative in their nature after Congress has laid down the broad rule; but it is a prohibition of the attempted subdelegation of the very power itself or the duty

of meeting in annual session and declaring the national will in some form of enactment in the general laws. As to when the necessity for delegation exists, the decision rests with the legislative body—a discretion not to be disturbed by the courts except in clear cases of abuse. *The very fact of the separation of powers should make courts more careful in this respect.*"

76 S.D. at 315, 77 N.W.2d at 12, quoting Cheadle, J., The Delegation of Legislative Functions, 27 Yale L.J. 892, 901 (1918). The test, therefore, is (1) whether the Legislature retains sufficient and proper control over those aspects which are not delegable and (2) whether there is a sufficient guide or standard to guide the agency. *Berdahl v. Gillis*, 81 S.D. 436, 136 N.W.2d 633 (1965); *See also, State, Division of Human Rights v. Prudential Insurance Co. of America*, 273 N.W.2d 111 (S.D.1978).

Mindful of this background, we examine the acts of the Legislature to determine whether they sufficiently prescribe a policy, standard, or rule for the guidance of the Board in carrying out the legislative purposes. *Application of Kohlman*, 263 N.W.2d 674 (S.D.1978).

SDCL 46–17–2 states:

It is the intent of this chapter and chapter 46–18 to relate, reasonably and equitably, the financing of water resources projects to the degree of benefits received from such water resources projects by:

. . . .

(4) Provisions whereby assignment of administrative jurisdiction and responsibility for the various phases of water resources development are related to such variable degrees of benefits.

SDCL 46–17–16 requires the Board to coordinate all federal, state and local water resources projects in South Dakota ... "in order to assure that optimum overall benefits will accrue from the construction and operation of water conservation, control and beneficial use facilities and to ensure maximum consideration of local needs and

desires." The Board is charged with similar responsibilities in SDCL 46–17A–13.[5] The Board could, under such statutory mandate, determine that it would not be consistent with local needs and desires for a subdistrict to presently levy taxes to support a fund which may or may not ultimately be needed, or it might conclude that the budget submitted exceeded such needs.

In *Wall v. Fenner*, 76 S.D. 252, 76 N.W.2d 722 (1956), we concluded that the authority of the State Banking Commission to determine whether the articles of incorporation of a state bank shall be approved or denied was not an unconstitutional delegation of authority since their action must be based on a determination of facts and the statute did not therefore give the commission an unlimited or absolute discretion. In *Affiliated Distillers Brands Corp. v. Gillis*, 81 S.D. 44, 130 N.W.2d 597 (1964), we saw the other side of the coin, and there held that a regulation adopted by the Commissioner of Revenue was invalid, because the Legislature failed to lay down any standards to guide the Commissioner's action.

We determined in *In re Oahe Conservancy Subdistrict*, 85 S.D. 443, 185 N.W.2d 682 (1971), that the Legislature could lawfully delegate to the Subdistrict certain powers, including the contracting authority found in SDCL 46–18–38. As previously noted, that power, which is more than ministerial, has since its origin been subject to some approving authority. If the power to contract was a permissible delegation to the subdistrict, then it seems logical that a delegated authority to approve or reject such contracts by a parent agency of state government would be permissible under the same general mantle of purposes, and the standards would be equally valid.

We also stated in *In re Oahe Conservancy Subdistrict*, supra: "Creation of the Subdistrict, with the powers given to the board to enter the Master Contract, not being unlawful delegations of legislative power neither is the authority of the Subdistrict to levy taxes not in excess of one mill provided for in SDCL 46–18–41 an unlawful delegation of that power." 185 N.W.2d at 693. Again, if the power to tax is not an unconstitutional delegation of authority, then the provision in SDCL 46–18–42 conferring on the Board power to approve the Subdistrict budget before that tax is levied seems no less constitutional. We conclude that the Legislature adopted understandable standards to guide the board in the exercise of its power.

In addition to the prohibition against the delegation of legislative power, there is a further limitation found in Art. III, § 26 of our constitution which provides that "[t]he Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property, effects, whether held in trust or otherwise, or levy taxes, or to select a capital site, or to perform any municipal functions whatever."

Appellant argues that SDCL 46–18–38 and 46–18–42 cannot vest more than ministerial duties on the Board without violating that constitutional prohibition.

We did conclude in *In re Oahe Conservancy Subdistrict*, supra, that while the Subdistrict is not a true municipal corporation, it is vested with some of the powers and attributes of a municipality, and hence is sometimes called quasi-municipal. We have held that the framers of our constitution

---

5. SDCL 46–17A–13 reads:

The objectives and purposes to be served by the board shall be to resolve conflicting special interests of federal, state and local agencies or entities or private interests in proposed water projects, including federal projects and the designation and preservation of certain rivers or portions thereof as scenic rivers so that the public interest in such project proposals will be protected and enhanced, optimum over-all benefits will accrue to the people of South Dakota, and maximum consideration of all needs and desires in such water projects will be ensured, especially in those involving multiple purposes such as combinations of irrigation, flood control, navigation, electric power, domestic and stock water, municipal and industrial water supplies, lake stabilization, pollution control, water quality enhancement, fish and wildlife, recreation, ground water recharge, erosion control, or other beneficial purposes and uses.

intended, by the term 'municipal corporation', to use it in its restricted sense, as applicable only to incorporated cities, towns, or villages invested with the power of local legislation. *Town of Dell Rapids v. Irving*, 7 S.D. 310, 64 N.W. 149 (1895); *Cf., Davenport v. Elrod*, 20 S.D. 567, 107 N.W. 833 (1906). However, we do not reach the question whether the contracts and budget of the Subdistrict were a municipal activity.

We also said in *In re Oahe Conservancy Subdistrict*, supra:

> We have examined other provisions of our constitution to determine if they apply to or affect the opinion and have concluded Art. III, § 26, which denies the legislature power to delegate to a 'special commission, private corporation or association' the authority there stated does not bar such delegation to the Subdistrict which partakes of the same nature as the District [South Dakota Conservancy District] which is declared to be a 'governmental agency, body politic and corporate'. SDCL 46–17–4.[6]

185 N.W.2d 694.

SDCL 1–40–9 now directs the Department of Water and Natural Resources (Board) to perform all the functions of the former board of directors of the South Dakota Conservancy District, created by SDCL 46–17–4. Therefore, the Board now performs all of the functions previously conferred on an entity to which we indicated the Legislature is not barred under Art. III, § 26 from delegating power. We now state directly that the water and natural resources board created by SDCL 1–40–5 is not a "special commission" within the meaning of Art. III, § 26 of our Constitution. *See, People v. Letford*, 102 Colo. 284, 79 P.2d 274 (1938); *Public Service Commission of Montana v. City of Helena*, 52 Mont. 527, 159 P. 24 (1916); *Evans v. West Norriton Tp. Municipal Authority*, 370 Pa. 150, 87 A.2d 474 (1952); *Walnut &*

*Quince Streets Corp. v. Mills*, 303 Pa. 25, 154 A. 29 (1931); *Appeal of Ward*, 289 Pa. 458, 137 A. 630 (1927).

We have reviewed the additional issue advanced by appellant and find it is without merit. The judgment is affirmed.

DUNN, MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C. J., concurs in result.

---

6. SDCL 46–17–4 reads:

There is hereby created within the state of South Dakota, a conservancy district, to be known as the "South Dakota conservancy district." The boundaries of said district shall coincide in all particulars with the boundaries of the state of South Dakota. Such district shall be, and it is hereby declared to be a governmental agency, body politic and corporate with authority to exercise the powers specified in this chapter and chapter 46–18.