Dear Representative Lang:
This opinion is in response to your question asking:
 RSMo 77.450 states that if a vacancy occurs in any third class city elective office, "In all other counties" (second sentence), "the mayor, or the person exercising the office of mayor, shall recommend a person to fill the vacancy . . ." The section further states, "The council shall approve the person recommended by the mayor."
 The question is related to the council's authority to disapprove the recommendation of the mayor. If "shall approve" is interpreted to mean that the council has no option but to approve the choice of the mayor, it is inconsistent with the first sentence which provides for the filling of vacancies in certain first class counties for certain periods "by appointment," without council action. Since the term "recommend" is used in the instance cited, it raises the question of whether the city council has the option to accept or reject the recommendation.
Section 77.450, RSMo 1986, states:
 77.450. Vacancies, how filled. — In counties of the first class with a charter form of government and which do not contain a city with a population of at least four hundred thousand, if a vacancy occurs in any elective office, the mayor, or the person exercising the office of mayor, shall cause a special election to be held to fill such vacancy; provided, however, when any such vacancy occurs within six months of a municipal election, no election shall be called to fill such vacancy, but the same shall be filled by the mayor or the person exercising the office of mayor by appointment; provided further, that any vacancy in the office of councilman which may occur within said six months shall be filled by election, in such manner as may be provided by ordinance. In all other counties, if a vacancy occurs in any elective office, the mayor, or the person exercising the office of mayor, shall recommend a person to fill the vacancy from the political party of the person who previously held the office. The council shall approve the person recommended by the mayor. The successor shall serve until the next regular election. If a vacancy occurs in any office not elective, the mayor shall appoint a suitable person to discharge the duties of the same until the first regular meeting of the council thereafter, at which time such vacancy shall be permanently filled. [Emphasis added.]
Ascertainment of legislative intent is the primary goal of statutory construction. State ex rel. Missouri State Board ofRegistration for Healing Arts v. Southworth, 704 S.W.2d 219,224 (Mo. banc 1986); Collins v. Director of Revenue,691 S.W.2d 246, 251 (Mo. banc 1985); O'Flaherty v. State TaxCommission of Missouri, 680 S.W.2d 153, 155 (Mo. banc 1984). The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent, if possible, and to consider words used in the statute in their plain and ordinary meaning. Wolff ShoeCompany v. Director of Revenue, 762 S.W.2d 29, 31 (Mo. banc 1988); Thomas v. Frazier, 626 S.W.2d 682, 684 (Mo.App. 1981);City of Willow Springs v. Missouri State Librarian, 596 S.W.2d 441,445 (Mo. banc 1980). It is apparent that the legislature did not intend that it was mandatory that the city council approve whomever the mayor recommends. The statute requires the city council to take action upon the mayor's "recommendation". To interpret the action required to be nothing more than a "rubber stamp" of approval of the mayor's recommended person would be presuming the legislature intended a meaningless act by the city council. Words must be given some significance as we are not entitled to presume that the legislature inserts meaningless words into a statute. State ex rel. May Departmentstores Company v. Weinstein, 395 S.W.2d 525 (Mo.App. 1965).
Construing the word "approve" as allowing the council discretion to approve or disapprove the person recommended is consistent with decisions in other states regarding the meaning of "approve." "It is almost uniformly held that the word `approved' connotes a confirmation and involves the exercise of judgment and discretion." County Council of Baltimore Countyv. Egerton Realty, 140 A.2d 510, 512 (Ct.App. Maryland 1958). As stated in Oahe Conservancy Subdistrict v. Janklow,308 N.W.2d 559, 561 (South Dakota 1981):
 It is generally held that statutes which vest "approval" authority imply a discretion and judgment to be exercised to sanction or reject the act submitted. [Citations omitted.] The very act of "approval," unless limited by the context of the statute providing therefor, imports the act of passing judgment and the use of discretion, and a determination as a deduction therefrom, [Citation omitted.] and does not contemplate a purely ministerial act. [Citation omitted.] The word "approval" in a statute must be given its usual and accepted sense, where neither the context nor the apparent intention of the Legislature justifies any departure from the ordinary meaning, which is the opposite of "disapproval" and necessarily involves the exercise of discretionary power. [Citation omitted.]
 CONCLUSION
It is the opinion of this office that the sentence in Section 77.450, RSMo 1986, providing "[t]he council shall approve the person recommended by the mayor" grants the council discretion to approve or disapprove the person recommended.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General